JACKSON & SUBURBAN TRACTION CO. v. COMMISSIONER OF RAILROADS.

1. STREET RAILWAYS—FRANCHISES—AUTHORITY OF MUNICIPALITY.
  The right of a street-railway company to construct its road, and of a city to grant the use of its streets therefor, are both dependent on legislative authority.

2. SAME—CROSSING OF STEAM ROAD—CONSTITUTIONAL LAW—TITLE OF ACT.
  Act No. 171, Pub. Acts 1893 (2 Comp. Laws, § 6349 et seq.), entitled "An act to regulate the construction of the tracks of railroads and street railroads across each other, and the stringing of wires, electric or other, over railroad tracks, and relative to the maintenance of such tracks heretofore so constructed and wires heretofore so strung," is not unconstitutional as expressing two objects in its title, since, if necessary in order to sustain the act, the wires therein referred to would be construed as being limited to wires used in connection with one or the other of the roads.

3. SAME — SEPARATION OF GRADES — AUTHORITY OF RAILROAD COMMISSIONER.
  Under Act No. 171, Pub. Acts 1893 (2 Comp. Laws, § 6349 et seq.), authorizing the railroad commissioner to determine the

manner in which crossings of railroads and street railroads shall be made; and section 6466, providing that street-railway companies organized under the act of which such section is a part shall be subject to the supervisory control of the railroad commissioner, as provided by the first-mentioned act,—such commissioner has the power to require a street-railway company thereafter acquiring the right to lay tracks in a city street, as a condition to the exercise of such right, to elevate its tracks over those of an intersecting steam road, notwithstanding its contention that this could be done only through the exercise of the power of eminent domain as against abutting property owners, which power it does not possess.

4. SAME.
The statute contemplates that there shall be a separation of grades at such crossings where "reasonably practicable;" but this does not mean that it should be required in all cases where physically possible.

5. SAME—APPEAL—ABUSE OF DISCRETION.
Conceding that the discretion of the commissioner in ordering an overhead crossing is reviewable by the court, his decision will be overturned only in case of a clear abuse of such discretion.

6. MANDAMUS—CONCLUSIVENESS OF RETURN.
The return to an order to show cause in *mandamus* is conclusive as to the matters therein contained.

*Mandamus* by the Jackson & Suburban Traction Company and the city of Jackson to compel Chase S. Osborn, commissioner of railroads, to vacate an order requiring the construction of an overhead crossing. Submitted June 7, 1901. Writ denied July 19, 1901.

*Thomas E. Barkworth, Howard, Roos & Howard,* and *John W. Miner,* for relators.

*Horace M. Oren,* Attorney General (*Roger Irving Wykes,* of counsel), for respondent.

HOOKER, J. The relator is a street-railway company organized, and its road is in operation upon the streets of the city of Jackson, under Act No. 35 of the Laws of 1867. The consent of the city to the construction and operation of the

road provides that the company shall construct its railway from its present terminus, on Francis street, to the south corporation line, within one year from the taking effect of the same, "or at such earlier date as a crossing of said railway with the Michigan Central and Lake Shore railways can be arranged with the State commissioner of railroads." The relator made application to the respondent for the approval of the place and manner in which relator should cross those tracks, as required by Act No. 171 of the Public Acts of 1893, and after a hearing he determined that such crossing should be made by means of an overhead bridge, to be constructed in accordance with plans to be submitted to, and approved by, him, said bridge to be at least 22 feet above the surface rails of the tracks crossed, after those tracks had been lowered at least 3 feet from the present grade line. Thereupon this application for a *mandamus* was made to compel respondent to vacate so much of his order as requires an overhead crossing, and to proceed to prescribe such reasonable safeguards to avoid accident at said crossing as the law requires.

The order of the respondent is attacked upon several grounds. It is said:

*First.* He has not power to make such an order, because (*a*) the railway has a vested right, under the law and its arrangement with the city, to the use of the highway, and that this is taken away; (*b*) the city has a similar right to have the highway so used, and to control such use, and it is deprived of these rights; (*c*) the relator cannot elevate its track in the manner prescribed without first acquiring a right from abutting landowners, and, as it has not the right of eminent domain, it is powerless to do so, and therefore is deprived of the right to build and operate its road; (*d*) that all of these are vested rights, of which relator and the city cannot be deprived without due process of law, and that involves action by the judicial branch of the government.

*Second.* The law is unconstitutional, as class legislation.

*Third.* That the order of the commissioner, if otherwise valid, should be vacated because it is not reasonably practicable for the relator to comply with it; and, at all

events, it should be modified by compelling the steam roads to share the expense of the overhead crossing.

The petition does not state the date of the adoption of the ordinance giving authority to build in the street, but as the track on Francis street was required to be constructed within one year from the time that the ordinance took effect, which time had apparently not expired when the briefs were made, and as it clearly contemplates application to the commissioner, we conclude that the relator's rights were acquired after the laws cited were in force, and subject to the provisions of such laws, so far as they are valid. We do not mean to imply that such laws apply only to rights acquired since their passage, but, as we have that kind of a case before us, we need not consider the effect upon pre-existing rights.

The act under which this company was organized was passed in 1867. See 2 Comp. Laws, § 6434 *et seq.* In 1897 three sections were added to this act, one of which (2 Comp. Laws, § 6466) reads as follows:

" All street-railway corporations organized or doing business under this act shall be subject to the supervisory control of the commissioner of railroads, as provided by act number one hundred and seventy-one of the Public Acts of Eighteen Hundred and Ninety-Three; and the commissioner of railroads shall also ·have power to make from time to time reasonable rules and regulations for the operation of the street railways of such corporations in the conduct of the suburban express business they are authorized to carry on by this act as amended."

The effect of this amendment is to make Act No. 171, Pub. Acts 1893 (2 Comp. Laws, § 6349 *et seq.*), a part of it, to the extent indicated.

It is urged by counsel that Act No. 171 is unconstitutional, and it may be said that an unconstitutional act cannot be made a part of another act by reference. Without passing upon that question, it is enough to say that, whether the act can be applied to rights which vested previous to its passage or not, it can stand as to those

granted afterwards, unless it is void because of a defective title.   The title is as follows:

"An act to regulate the construction of the tracks of railroads and street railroads across each other, and the stringing of wires, electric or other, over railroad tracks, and relative to the maintenance of such tracks heretofore so constructed and wires heretofore so strung."

The plain object of the act, as expressed by the title, is the protection of life and property at crossings of railroads and street railroads.   The claim that two objects are expressed, because wires are referred to and regulated, does not impress us.   We are not certain that the title might not have been made broad enough to cover any appliance or structure erected over railways or street railways; but it is unnecessary to decide this, for, if it were necessary to sustain the act, we would be justified in limiting the act to those wires which are used in connection with one or the other of the roads.

The city of Jackson has no authority, other than that conferred by law, to enter into any arrangement to permit the use of its streets by railway companies, and no railway corporation has a right to build such railways, or even to exist, except by legislative permission.   This railway, then, acquired a vested property right, not to build a railroad upon the surface of the ground, in the street, at all events, but only where the law permits, and in compliance with the law.   It has no right to build any other kind of a road, or to build a road in any other than a lawful way or place.   These are conditions of the grant of its vested property rights, and, if it cannot comply with them, it cannot build the road.   The State is not obliged to authorize the building of railways in the streets; hence, if it chooses to do so, it may impose conditions.   One of these conditions is that at crossings of steam roads it shall comply with the requirements of the State, to be determined by the railroad commissioner, as to the method of crossing, and the expense of the same.   It was competent for the State to forbid any crossing at grade, and the law

indicates an intention to do so in all cases where it is reasonably practicable to avoid grade crossings. A railroad company is not in a position to say to the State: "It is true you have imposed conditions that we cannot or will not comply with; therefore we propose to build a road in a place and in a way that you have not authorized." If there is authority for the claim that the exercise of the right of eminent domain is necessary before relator can construct the road which it is authorized to construct, manifestly it will have to wait until provision can be made for it. It cannot do an unauthorized thing merely because the authorized one is not feasible. So, if it is true that relator cannot build an overhead crossing until it has secured rights from abutting proprietors, which it has no power to condemn, it will have to acquire them in some other way, or not build the road where contemplated. Again, the character of the crossing required, or its cost, may not meet relator's approval; but the determination by the railroad commissioner is one of the conditions imposed. It becomes unnecessary, therefore, to determine whether he is performing a judicial function, which only the courts are competent to perform, for the purpose of this case, or whether it is class legislation. Relator appears to have recognized this when it applied to the respondent. He had authority enough to be applied to, but not enough to enforce his order, yet enough so that relator still prays that he make another order according to law. We are of the opinion that this disposes of most of the contentions of the relator's counsel.

The act gives relator the right to except to the ruling of the commissioner. If by that is meant (and we do not say so) that this court will review his discretion upon the facts, it can, at the most, be in cases where there is a clear abuse of discretion, and it would be necessary for us to have the facts clearly before us to do that. *Detroit, etc., Ry.* v. *Commissioner of Railroads,* 127 Mich. 219 (86 N. W. 842). No evidence is returned, and there may not have been any taken, for the commissioner returns that he

viewed the premises, and satisfied himself, in ways not formally judicial ( as he may lawfully do ), of the circumstances and conditions upon which his action was predicated.    No issue is made in this court, and we must take his return as true.    We do not understand it to be his duty to order overhead crossings in all cases, or to impose all burdens arising from the separation of grades upon the applicant in all cases.    We understand that he has not done so in this case.    He has, so far as the bridge is concerned, but not as to the lowering of the steam roads.    He has determined the height to which relator must construct its bridge, but it does not devolve upon it to lower the steam-road tracks.    They will omit obedience at their peril, and relator need not be concerned about it.    Whether or not it is reasonably practicable to separate grades is a question of judgment.    The law does not mean that it shall be done in all cases where it is physically possible.    Any reason that shows the unfitness of a separation of grades is sufficient to warrant a grade crossing.    We are not prepared to say that the expense might not be taken into consideration, as well as the effect upon abutting property.    At the same time it is evident that the dangers of grade crossings are great, and the legislature has indicated a design to forbid them wherever it can be consistently done.    We see no occasion to interfere with the order made, and the writ is denied.

The other Justices concurred.