[No. 16140.  Department One.  January 24, 1921.]

THE STATE OF WASHINGTON, *on the Relation of The City of Toppenish, Respondent,* v. PUBLIC SERVICE COMMISSION, *Appellant.*[1]

RAILROADS (31)—CONSTRUCTION AND MAINTENANCE — CROSSING HIGHWAYS—POWERS OF PUBLIC SERVICE COMMISSION—STATUTES. Under Rem. Code, § 8733-2, providing that highways shall not cross any railroad at grade without authority from the public service commission, and Id., § 8733-3, providing that the commission shall order a grade crossing if it is impracticable to cross above or below grade, the commission may only determine the kind of crossing to be established, where a city, under the power conferred by Rem. Code, § 7671-14, to open streets, has decided that there shall be a crossing.

MACKINTOSH, J., dissents.

Appeal from a judgment of the superior court for Yakima county, Taylor, J., entered May 17, 1920, upon findings in favor of the plaintiff, reversing upon certiorari an order of the public service commission. Affirmed.

*The Attorney General* and *R. M. Burgunder, Assistant,* for appellant.

*D. H. Bonsted,* for respondent.

PARKER, C. J.—This is an appeal by the public service commission from a judgment of the superior court for Yakima county reversing its order, denying a petition of the city of Toppenish for the establishment of a grade street crossing over the right of way and tracks of the Northern Pacific Railway Company in that city.

There is no serious controversy as to the existence of the facts which we regard as decisive of the case. They may be summarized as follows: Toppenish is a

[1]Reported in 194 Pac. 982.

city of the third class, in Yakima county. The right of way and tracks of the Northern Pacific Railway Company run through the city in a direction which, for present purposes, we may assume as east and west, dividing the city into two parts of about equal size, both as to territory and population. The city has a population of about three thousand, and is a thriving trade center of a large and prosperous agricultural community.

The business and public institutions of the city seem to be, in numbers, approximately equally divided between the north and south sides of the railway. There are in the city but two street crossings of the railway, being the only public ways of travel between the north and south sides of the railway. One of these, Toppenish avenue, crosses the railway at grade practically in the center of the business district of the city, over which there is a large amount of traffic which, during the business hours of the day, at times becomes considerably congested; a tally of such traffic upon a typical business day showing 4,387 pedestrians, 558 automobiles and 590 teams, passing over the crossing.

Two thousand feet west of this crossing is the other crossing, near the western limits of the city. The railway company's passenger depot, and its freight depot, and apparently most of its switching or passing tracks, are east of the Toppenish avenue crossing. While there are as many side tracks west of that crossing, they seem to be for the most part such as may properly be designated as industrial or loading tracks—that is, side tracks for the loading of cars direct from motor and horse drawn vehicles; there being a large amount of such loading of cars by reason of the nature of the agricultural products shipped from Toppenish. Beech street is parallel with and five hundred and sixty feet

west of Toppenish avenue, and extends both to the north and to the south of the railway right of way; but has never been extended or opened for travel across any part of the company's right of way, which at that point is five hundred and ninety feet wide; within which width there are two main line tracks, and six side tracks.

In March, 1919, the city council duly made and adopted an order evidencing its decision that Beech street should be extended and opened for travel across the right of way and tracks of the railway company so as to connect the existing northern and southern portions of that street, and directing the mayor of the city to petition the public service commission for the establishment of a grade crossing of the right of way and tracks of the railway company along the projected line of Beech street. Soon thereafter the mayor filed a petition accordingly with the public service commission. The matter was set down for hearing before the commission; the railway company being notified, filed its answer to the petition of the city, admitting in substance the impracticability of an overhead or under crossing, and denied the necessity of the establishment of a grade or any other crossing upon the projected line of Beech street. The matter being submitted to the public service commission for final decision, upon the evidence produced before it, resulted in findings and an order by the commission the language of which, in so far as we need here notice its terms, is as follows:

"That it is not practicable to cross the railroad either above or below grade, both on account of the excessive cost and the physical obstacles to be overcome.

"There was a conflict of testimony as to the necessity for the opening of this crossing, and while the weight of that testimony may be in favor of the applicant we believe that that is outweighed by the danger-

ous condition of the proposed crossing, and other considerations. Believing, therefore, that the granting or refusal of grade crossing applications rests largely in the discretion of the commission, and from the foregoing findings the commission makes the following

"ORDER

"It is hereby ordered that the application of the city of Toppenish in the above entitled matter be and the same is hereby denied and the proceedings dismissed."

Thereafter the city caused the proceeding to be removed to the superior court for Yakima county by a writ of review, as provided by Rem. Code, § 8626-86, seeking a reversal of the order of the commission and an order from the court that the commission be required to make its order granting the right to the city to have established and maintained a grade crossing as prayed for by it. The matter being heard in the superior court upon the record of the proceedings had before the commission, including all of the evidence introduced before the commission, and being submitted to the court for final decision upon the merits, counsel for the city, the commission, and the railway company appearing, judgment was rendered by the court as follows:

"It Is Ordered, Adjudged and Decreed, that the order of the public service commission of Washington, dated the 26th day of January, 1920, dismissing the petition of relator, city of Toppenish, be and the same is hereby, vacated and set aside, and

"It Is Further Ordered, Adjudged and Decreed, that the public service commission of Washington and the individual members thereof and each of them, be, and they are hereby ordered and directed to make and enter an order herein granting and allowing the petition of the relator, the city of Toppenish, to construct a grade crossing across the tracks of the Northern Pacific Railway at the point described in its petition."

This is the judgment appealed from, and here sought to be reversed.

Our problem is stated in the beginning of the brief of counsel for the commission as follows:

"The appeal is taken to secure a construction by this court of the provisions of the grade crossing law, particularly of §§ 2 and 3 of Chapter 30, laws of 1913, being §§ 8733-2 and 8733-3, Rem. 1915 Code. The specific question to be decided is whether the public service commission, in the exercise of its discretion and judgment, may deny a petition of a city to extend one of its streets at grade over the tracks of a railroad company where it is determined that a grade crossing would be dangerous, and that an over or under crossing is not practicable."

Sections 8733-2, 8733-3, in so far as here seems necessary to notice their language, read as follows:

"All railroads and extensions of railroads hereafter constructed shall cross existing railroads and highways by *passing either over or under the same, when practicable, and shall in no instance cross any railroad or highway at grade without authority first being obtained from the commission to do so.* All highways and extensions of highways hereafter laid out and constructed shall cross existing railroads by *passing either over or under the same, when practicable, and shall in no instance cross any railroad at grade without authority first being obtained from the commission to do so.* . . . . *In determining whether a separation of grades is practicable, the commission shall take into consideration* the amount and character of travel on the railroad and on the highway; the grade and alignment of the railroad and the highway; the cost of separating grades; the topography of the country, and all other circumstances and conditions naturally involved in such an inquiry."

"Whenever any railroad company desires to cross any highway or railroad at grade, it shall file a written petition with the commission setting forth the reasons why the crossing cannot be made either above or below

grade, and *whenever* the county commissioners of any county, or *the municipal authorities of any city or town,* or the state officers authorized to lay out and construct state roads, *desire to lay out or extend any highway across any railroad at grade,* they shall file a written petition with the commission, setting forth the reasons why the crossing cannot be made either above or below grade.   Upon receiving such petition the commission shall immediately investigate the same,  .  .  .   The evidence introduced shall be reduced to writing and be filed by the commission.  *If the commission finds that it is not practicable to cross the railroad or highway either above or below grade, it shall make and file a written order in the cause, granting the right and privilege to construct a grade crossing.*  The commission, in its discretion, may provide in the order authorizing the construction of a grade crossing, or at any subsequent time, that the railroad company shall install and maintain proper signals, warnings, flagmen, interlocking devices, or other devices or means to secure the safety of the public and its employees.  If upon investigation the commission shall find that it is impracticable to construct an over-crossing or under-crossing on the established or proposed highway, and shall find that by deflecting the established or proposed highway a practicable and feasible over-crossing or under-crossing or a safer grade crossing can be provided, it shall continue the hearing on the petition and hold a supplemental hearing thereon.  At least ten days' notice of the time and place of such supplemental hearing shall be given to all land owners that may be affected by the proposed change in location of the highway.  At such supplemental hearing the commission shall inquire into the propriety, advisability and necessity of changing and deflecting the highway as proposed for the purpose of securing an over-crossing, under-crossing, or safer grade crossing."

We have italicized the words of these sections which seem to call for particular notice.  It is not claimed here that there is any opportunity for "deflecting .  .  .  .  the proposed highway"—that is, the estab-

lishment of the proposed crossing elsewhere, so as to make a safer grade crossing; and, as already noticed, neither is an over-head or under-crossing practicable at Beech street, because of the excessive cost and the physical obstacles. So the question is, in its last analysis; do these facts authorize the commission to entirely prevent the establishment of any crossing at Beech street by its refusal to grant the privilege of establishing a grade crossing there as proposed?

Now it seems to us that a critical reading of all these statutory provisions can lead only to the conclusion that the commission is not therein given power to decide whether or not there shall be any crossing, but is only given the power to decide what kind of a crossing shall be established. It is true that we find in Rem. Code § 8733-2, the words, "highways . . . . shall in no instance cross any railroad or highway at grade without authority first being obtained from the commission to do so." But this does not mean that it is not the duty of the commission to grant such authority when it is found impracticable to construct a crossing above or below the grade of the railway, the proper authorities having decided that there shall be a crossing at the place proposed. The concluding words of that section strongly suggest that the question to be determined by the commission is only whether or not "a separation of grades is practicable," and not whether or not there shall be any crossing. However, we have in the next section a mandatory provision that

"If the commission finds that it is not practicable to cross the railroad or highway either above or below grade, it shall make and file a written order in the cause, granting the right and privilege to construct a grade crossing."

We have noticed that Toppenish is a city of the third class. By turning to Rem. Code, § 7671-14, defining

the powers of such cities and their councils, we find
that they have power to "(c) . . . establish, lay
out, alter, keep open, open, widen, vacate, improve, and
repair streets . . ." Having in mind, in addition
to these considerations, the well established rule that
public bodies of the nature of our public service com-
mission are bodies with limited powers and jurisdic-
tion, possessing only such as the law expressly gives
them, or are by clear inference necessary to the exer-
cise of such powers as are clearly given them, and also
the fact that municipal and county authorities are the
most common agencies of the state in the exercise of
its power to lay out and establish highways, we cannot
escape the conclusion that, since the city authorities
have decided that this crossing should be established,
and being impracticable as found by the commission
to establish it as an overhead or under-crossing, and
there being no opportunity for making it safer by es-
tablishing it elsewhere, it becomes the plain duty of the
commission to enter its order permitting the establish-
ment of the crossing as a grade crossing as decided by
the superior court.

Contention is made in the commission's behalf rested
upon Rem. Code, § 8733-4, providing for the change or
discontinuance of existing highway grade crossings
over railways. The argument is that, immediately
upon the establishment of this grade crossing, proceed-
ings may be instituted looking not only to its change
of location, but looking even to its discontinuance. A
somewhat persuasive argument is possible to be made
upon the provisions of this section, such as might make
the provisions of the two preceding sections mean that
the decision of the question of whether or not there
shall be any crossing rests in the discretion of the com-
mission. However persuasive such argument may be,

we think it could not be legitimately carried to the extent of overriding the plain mandate of § 8733-3, that

"If the commission finds that it is not practicable to cross the railroad or highway either above or below grade, it shall make and file a written order in the cause, granting the right and privilege to construct a grade crossing."

We think that the proceeding for discontinuance or change of an existing crossing under § 8733-4, is so separate and apart from the proceedings for the establishment of a crossing under § 8733-2-3, that the force of the plain mandatory language of the former should not be considered as being impaired by the language of the latter.  Besides it is conceivable that the dangers of an existing crossing are by actual experience demonstrable with much more certainty than the prospective dangers of a proposed crossing.  It may be that the action of a city council in establishing a crossing might be so arbitrary and capricious that their action might be stayed; but such manifestly is not this case.  It is but little short of inconceivable that a council of a city of three thousand people, situated as Toppenish is, could be considered as acting capriciously in insisting upon three crossings such as are here contemplated.

It seems to be conceded by counsel for the commission that they have been able to find but one decision of the courts of this country directly in point, as they claim, supporting their contentions here made; and that is *In re Town Board of the Town of Royalton,* 138 App. Div. 412, 122 N. Y. Supp. 844; but, when that decision is critically read, we think it becomes of no controlling force touching our present inquiry; since it was not there a question as to whether or not there should be any crossing, but a question of whether or not there should be a grade crossing or an overhead crossing.  The commission decided that it should be an

overhead crossing. There possibly is some room for arguing that such decision of the commission was a prevention of the making of any crossing as proposed, by reason of the great expense of making an overhead crossing. That case, we think, however, decides only that there should be one kind of a crossing instead of another, rather than that there should be no crossing.

We note that Beech street is sixty feet wide to the south of the railway, and eighty feet wide to the north of the railway; and that some buildings of the railway company upon its right of way seem to project into what would be a crossing of the street at a width of eighty feet. This is also possibly true at a width of sixty feet. It does not appear at what width the city proposes to carry the street across the railway company's right of way. We are not here deciding as to whether or not, or to what extent, the city may be compelled to exercise the power of eminent domain and compensate the railway company for the taking or damaging of its property in the ultimate establishing and constructing of the proposed crossing.

The judgment of the superior court is affirmed.

HOLCOMB, FULLERTON, and BRIDGES, JJ., concur.

MACKINTOSH, J., dissents.