[No. 17731.   *En Banc.*   January 10, 1924.]

THE STATE OF WASHINGTON, *on the Relation of Spokane International Railway Company, Appellant,* v. E. V. KUYKENDALL, *as Director of Public Works et al., Respondents.*[1]

RAILROADS (28)—CONSTRUCTION—CROSSINGS—POWERS OF DEPARTMENT OF PUBLIC WORKS. Under the Const., Art. XII, § 13, giving every railroad the right to cross any other road, and under Rem. Comp. Stat., § 10513, relating to proceedings before the department of public works, if the department finds that an over or under grade crossing is impracticable, it has no power other than to order a grade crossing and prescribe the manner and terms upon which it may be made.

SAME (28)—CROSSINGS—"PRACTICABILITY" OF CROSSINGS—FINDINGS OF DEPARTMENT—EVIDENCE—SUFFICIENCY. A finding by the department that an underground railroad crossing is not "practicable" is sustained where its cost would be prohibitive in that the cost of constructing a spur to an industry would not be repaid by the gross revenues for two or three years.

SAME (28)—CROSSINGS—REGULATION — VALIDITY. Under Rem. Comp. Stat., § 10405, requiring a railroad to stop its trains within 500 feet of a grade crossing, an order of the department of public works, in allowing a grade crossing, that the company shall "reduce" its speed so as to pass the crossing under control, is invalid.

SAME (28)—CROSSINGS—SAFETY DEVICES—DISCRETION OF DEPARTMENT. Where a power company seeks the right to cross another railroad, it must bear the burden of the crossing, including the expense of interlocking devices; but it is not error or an abuse of discretion for the department to refuse to order the installation of an interlocking device, in view of Rem. Comp. Stat., § 10513, giving it discretionary power to do so, where the device is not indispensable for the safety of the public and employees of the railroads.

MAIN, C. J., MACKINTOSH, PEMBERTON, and BRIDGES, JJ., dissent.

Appeal from a judgment of the superior court for Spokane county, Blake, J., entered October 20, 1922, affirming an order of the department of public works, after a hearing before the court. Affirmed.

[1]Reported in 222 Pac. 211.

*Allen, Winston & Allen,* for appellant.

*Graves, Kizer & Graves,* for respondents.

Holcomb, J.—Proceedings were had upon the petition of respondents Spokane & Eastern Railway & Power Company and Inland Empire Paper Company, before the department of public works, under the provisions of § 10513, Rem. Comp. Stat. [P. C. § 5640], resulting in an order granting the power company permission to install a grade crossing for a spur track of the power company's railroad across the main line of appellant at Millwood, in Spokane county, this state.

The petition of the power and paper companies set forth the existence of a large paper manufacturing plant owned by the paper company near Millwood, and near the main line of appellant, and that appellant has in operation a spur track to the paper company's plant, used to ship in raw material and ship out manufactured products in carload lots; that the main line of the power company immediately adjoins that of the railway company on the south, and that the grades of both railway lines are substantially identical at the point of the proposed crossing; that the power company has tributary to its line at Hayden Lake, Idaho, a forest containing wood which can be used to advantage in the manufacture of paper, and that it connects with the Great Northern Railway Company at Spokane, and has traffic agreements with it which would facilitate the handling of wood and wood products in carload lots along that line; that it was impractical to establish an over or under grade crossing; that the spur track would not be used to exceed four times per day, and that it was necessary to grant the right to cross the tracks of appellant at grade.

In its answer appellant denied the existence of any substantial amount of pulp wood near Hayden Lake;

admitted the connection of the power company with the Great Northern Railway Company, denying that any advantage would accrue to the power company or the paper company by installing the crossing, except the saving of some freight by the power company, and further plead the furnishing of ample facilities by appellant to the paper company; that, if the physical connection sought were permitted, it would necessitate the stopping of each train operated by appellant upon its main line, as well as its side track at Millwood, and thus impose upon appellant a perpetual daily charge for which it cannot be compensated by law, and would necessarily bring into existence another grade crossing with its constant and perpetual risk of accident. It also alleged that certain facilities and connections existed between the power company's railway and other railroads at Spokane and other points, by reason of which no public necessity exists for permitting the grade crossing. The department found that it was impractical to install an overhead or underground crossing; that appellant was not furnishing good service to the paper company; that its route east via the Canadian Pacific Railway was circuitous; that the power company has supplies of pulp wood on its line not available to the appellant company; that it has traffic connections at Spokane with all other lines of railway. The department thereupon permitted the installation of the proposed grade crossing without safety signals or interlocking devices, but orders: "that the Spokane & Eastern Railway & Power Company, while using this crossing flag all trains across the same, and the Spokane International Railway Company shall reduce the speed of trains at that point so as to pass this crossing under control, and with a reasonable degree of safety."

Appellant caused the order of the department to be reviewed by the superior court for Spokane county,

which affirmed the order of the department, this appeal resulting.

It was contended in the review proceedings in the court below, and is contended here, that the finding and order of the department were erroneous, unreasonable and unlawful; first upon the facts as not being warranted by the evidence; second, that the order fails to require interlocking or signal devices to be installed at the crossing; third, that it is not impractical to install an under crossing; and fourth, that it imposes a perpetual charge against appellant in that it is required by law to stop its trains within 500 feet of any unprotected railway grade crossing.

It is first contended that the department had jurisdiction to refuse or permit the crossing. The opinion in *State ex rel. Tacoma Eastern R. Co. v. Northern Pacific R. Co.,* 104 Wash. 405, 176 Pac. 539, is quoted as follows:

"When a petition is filed for permission to cross an existing road, there are three parties in interest, the two companies and the state; the latter having power to grant or refuse the petition. If it grants the right to cross all questions of prior right or occupancy of the ground must give way, for the order is a finding by the sovereign state that the need of the public demands two roads instead of one, and the order *ipse facto* forecloses all questions of seniority or priority between the contending roads."

This, however, is no more than saying that the concerns represent public interest and for that reason are largely subject to public control. So far as the right and power to regulate within reasonable bounds the place where and the manner in which one railroad may cross another is concerned, there is no doubt that the state is a party in interest. But the constitution gives to every railroad the right to intersect, cross, or connect with any other railroad. Article XII, § 13. We

therefore held in *State ex rel. Puget Sound & Willapa Harbor R. Co. v. Northern Pacific R. Co.*, 94 Wash. 10, 161 Pac. 850, that the right to cross could not be denied. The legislature may regulate the exercise of the right but may not destroy it.

Under the provisions of § 10513, Rem. Comp. Stat. [P. C. § 5640], relating to the crossing of one railroad by another, the railroad desiring to cross the other at grade shall file a petition with the department asking leave so to do. The department is required to investigate the practicability of crossing above or below grade, and if it finds such a crossing impracticable, the statute requires that it make and file a written order in the cause granting the right and privilege to construct a grade crossing, and prescribing the terms upon which the crossing is granted. Manifestly, under the constitution and the statute, the department has no other power than to permit a grade crossing if it finds that no other sort is practicable. If it finds over or under grade crossings impracticable, then it has power to prescribe the manner in which and terms upon which the grade crossing may be made. We held in *State ex rel. Toppenish v. Public Service Comm.*, 114 Wash. 301, 194 Pac. 982, that when the department found no method of construction other than a crossing at grade, which was practicable, it was without power to refuse to permit a grade crossing. That, it is true, was the case of a city street crossing, but the case nevertheless dealt with the power of the department under the statute.

It is next contended that the evidence is uncontradicted that there are no engineering obstacles to an underground crossing. It is not contended that an overhead crossing would be practicable from an engineering or construction standpoint. It is shown, how-

ever, that there is a financial obstruction, in that the power company cannot derive sufficient business from the paper company to justify it in going to the expense of installing an undergrade crossing. It is shown without dispute that an expense of as much as $60,000 to the power company would be prohibitive; that it would not derive sufficient gross revenues from the freight produced by the paper company in two or three years to repay the cost of an under crossing; that its cost would be approximately $115,000. Appellant contends that the word "practicable" does not apply to the question of financial ability, but means merely "capable of being effected," "possible of performance," "feasible;" citing *Des Portes v. Southern R. Co.,* 87 S. C. 160, 69 S. E. 148; *People ex rel. Plat v. Poly,* 17 Misc. Rep. 162, 40 N. Y. Supp. 990; Bouvier's Law Dictionary.

We think this too narrow a construction of the word "practicable."

". . . if the corporation is financially weak it must borrow money—assuming it can do so, issue additional stock—if there is a market therefor, increase its charges for transportation—if it can get the necessary authority, or cut down its expenses or decrease its facilities for serving the public, either or both—if it can do so. If the railroad has to pay a large amount, it ultimately falls on a considerable portion of the public, and affects private property which is impressed in a large measure with public control." *Mayor, etc., of City of Lowell v. Boston & Main R. Co.,* 238 Mass. 328, 130 N. E. 638.

In Indiana the words of the statute were "if the court shall find it is practicable," etc. The statute required that, in case of the failure of two railroad companies to agree as to the manner of crossing, the circuit court should by decree define the matter, "and when in the judgment of such court it is reasonable and practicable to avoid a grade crossing, it shall by its

process prevent a crossing at grade.'' It was contended that the term "practicable," as used in that statute, should be taken in the sense of physical practicability, or practicability from an engineering standpoint. The court said:

"Conceding, without deciding, that it is the legislative purpose to discourage, and to ultimately eliminate, the ordinary grade crossings, still we think that it was intended that the object shall be effected in such a reasonable and conservative manner as will not prove unduly oppressive to the railroad companies, nor be in disregard of the rights and interests of the public. . . . The word 'practicable,' as used in this statute, we think should be given its usual and ordinary meaning as indicated by its context. Plainly it is not synonymous with 'possible.' A thing practicable must necessarily be possible, but a thing may be possible that is not practicable. It cannot refer to apparent difficulties and cost alone, or the words 'finds practicable' become an idle phrase; for, under modern engineering skill, there is hardly anything but may be accomplished at some cost. It should not be held to relate solely to the removal of perils from persons carried by the cars, for the work might be so difficult and expensive as to amount to confiscation. The English Law Dictionary defines the word 'as possible of reasonable performance.' The phrase 'if the court shall find it practicable' implies a legal discretion, the exercise of judgment based upon the whole evidence of all the facts that affect the question of practicability within the usual and ordinary sense of the word. The question, therefore, depends upon the circumstances of each particular case. These circumstances may be many and varied. Among them, the difficulties to be overcome in changing from a grade to a crossing above or below grade; the cost, whether reasonable or extraordinary; the extent of public travel; the frequency of trains and cars; the character of the country, whether level or hilly; whether the employees of one company may see the cars of the other company far enough away to put their own under control before reaching the crossing; to

what extent, if at all, dangers to persons being conveyed
by the cars will be eliminated; whether the dangers
from ascending and descending the long gradients made
necessary by the elevation or depression of the track
of the crossing company will be greater or less than the
dangers from collision encountered at the grade cross-
ing; the availability and efficiency of well-known de-
vices for the avoidance of collisions at grade; and such
other surrounding conditions as naturally and reason-
ably address themselves to the judgment of prudent
and cautious persons. *Extension Company's Appeal,*
3 A. & E. R. R. C. 242; *Wooters v. Railroad Company,*
54 Texas, 294." *Pittsburgh C., C. & St. L. R. Co. v.
Indianapolis, C. & S. Traction Co.,* 169 Ind. 634, 81 N.
E. 487.

See, also, *Mayor, etc., of City of Lowell v. Boston &
Maine R. Co., supra; Norfolk & W. R. Co. v. Tidewater
R. Co.,* 105 Va. 129, 52 S. E. 852; *Jackson & Southern
Traction Co. v. Commissioner of Railroads,* 128 Mich.
164, 87 N. W. 133.

The observations made in the quotation above set
forth apply very well here. The facts clearly sustain
the findings of the department that it is impracticable
for the power company to construct an over or under
crossing. Besides, the statute does not contemplate
that the grade crossing authorized by the department
shall be perpetual. It may provide at any subsequent
time that the railroad company "shall install and main-
tain proper signal warnings or other devices to secure
the safety of the public and its employees."

It is no doubt true that the order of the department
adopting regulations for the safety of the proposed
grade crossing, permitting the appellant to reduce the
speed of its trains at that point so as to pass this
crossing under control and with a reasonable degree of
safety, is invalid. Appellant will be under the manda-
tory requirement of the law to "stop its trains within

five hundred feet of this railroad grade crossing.'' Rem. Comp. Stat., § 10405 [P. C. § 5596].

Appellant then contends that the interlocking devices should have been provided for in the order of the department. It is shown that an interlocking device of one type would cost $12,000, and another type would cost $36,000. Appellant assumes that this original cost of either kind of a device would be the only cost put upon the power company for the installation of an interlocking device. There would undoubtedly have to be workmen to operate, repair and maintain same, and the device ultimately would become worn out and have to be replaced. Appellant's assumption, therefore, that the cost of the device to the power company would be $1.50 or $5 a day, respectively, is erroneous. Appellant contends, on the other hand, that the cost of stopping its trains would amount to $15 per day, and that by ordering a grade crossing that sum per day is taken from appellant.

The financial burden of constructing the grade crossing must be borne by the power company. If the right to cross cannot be obtained by agreement with appellant, it must be obtained by condemnation and payment to appellant of all legal damages.

The evidence in the record is that appellant has six trains a day on its road; two are through freight trains; two are through passenger trains, and two are local trains. The two through passenger trains stop at Millwood station when flagged or signaled; the two local passenger trains stop at Millwood. Apparently, so far as present arrangements are concerned, the only necessity for making extra stops at the crossing would be for the two through passenger and the two through freight trains. The evidence as to the cost of stopping each freight train is that it would cost $2.52, amounting

to $5.04 for the two freights.   The through passenger trains, according to the evidence, would cost 44 cents each for the extra stop, amounting to 88 cents per day. Accordingly, the cost to appellant appears to be $5.92 a day for stopping its trains in obedience to this statute. If one of the local trains has to make an extra stop on the other side of the spur track from the station, it will add 44 cents to the daily cost, or a total of $6.36.

Upon this proposition, however, we consider that the only thing to be determined is whether the department properly exercised its discretion in refusing to require the installation of an interlocking device.   The statute, Rem. Comp. Stat., § 10513 [P. C. § 5640], reads:

"The commission, in its discretion, may provide in the order authorizing the construction of a grade crossing, or at any subsequent time, that the railroad company shall install and maintain proper signals, warnings, flagmen, interlocking devices, or other devices or means to secure the safety of the public and its employees."

We held in *State ex rel. Tacoma Eastern R. Co. v. Northern Pacific R. Co., supra,* that:

".  .  .  unless we can say that the order of the commission is wrong in the sense that its discretion has been arbitrarily exercised, we must, under well settled rules, say that it is not to be overcome by judicial decree.   To do so would be but to substitute our own will for that of the commission, and in so doing we would in all probability trench upon some equities while declaring others.   Being unable to say that we can render a better judgment than that rendered by the commission, and sustained on appeal by the lower court, we shall direct that the order be affirmed."

So here:   There does not appear to be any great danger from the operation of trains across this grade crossing of a mere spur track with but few trains

operating daily thereon by appellant at the place of crossing. An over or under crossing would not be reasonably practicable. An interlocking device is not at present indispensable for the safety of the public and the employees of the railroads. Appellant frankly admits that what it desires is, "first, to prevent the crossing on account of the loss of business to it; second, to prevent it because of the cost to it; and third, to prevent it because of the danger of accidents."

We are of the opinion, however, that the danger of accidents from the lack of any interlocking device, in view of the fact that appellant must stop its trains within five hundred feet of this crossing, and that the power company must flag its trains across, is very small. We cannot say, therefore, that the department arbitrarily abused its discretion in refusing to order an interlocking device installed.

The judgment of the lower court affirming the order of the department is affirmed.

TOLMAN, FULLERTON, PARKER, and MITCHELL, JJ., concur.

MACKINTOSH, J. (dissenting)—The department of public works having determined that a crossing at grade is necessary over the tracks of the Spokane International Railway Company, it became its duty to determine the manner in which the crossing should be made, and under § 10513, Rem. Comp. Stat. [P. C. § 5640], it could provide in its order authorizing the construction that the crossing company should "install and maintain proper signals, warnings, flagmen, interlocking devices and other devices or means to secure the safety of the public and its employees." In the exercise of its discretion under this section, it attempted to provide that the crossing company should

flag its trains and that the Spokane International Company should reduce the speed of its trains so as to pass the crossing under control. As the majority opinion states, this order was illegal, for § 10405, Rem. Comp. Stat. [P. C. § 5596], provides that all trains must be stopped before crossing another railroad at grade. This being the state of the record, it is apparent that the department of public works has not taken into consideration the cost which will be perpetually imposed upon the Spokane International Company in complying with the statutory requirement, and that the burden created by the allowing of the grade crossing has been practically placed entirely upon the senior road. While this court will not set up its judgment against that of the department, and will only interfere with its order when it appears that the department has arbitrarily exercised its discretion, it plainly appears here that that discretion has been so exercised arbitrarily, for the department has made an order which is erroneous and invalid, and the matter should be returned to the department for the purpose of making such distribution of the cost entailed by the stopping of the relator's trains as is equitable and just, or provide such other means for the safety of the public and the employees of both roads as in its discretion may seem best, under § 10513, Rem. Comp. Stat.

In the condemnation suit to acquire by the crossing company the portion of relator's right-of-way necessary for its tracks, the element of damage to the relator by reason of the necessity of stopping its trains is a matter which the condemnation jury could not consider, and the only relief, therefore, for the relator is that which can be afforded it by the department of public works.

For the reasons stated, I am unable to agree with

the majority opinion affirming the department's order, and therefore dissent.

MAIN, C. J., PEMBERTON, and BRIDGES, JJ., concur with MACKINTOSH, J.