[No. 18573.    Department Two.    September 25, 1924.]

THE STATE OF WASHINGTON, *on the Relation of Granite Investment Company et al., Plaintiff,* v. THE SUPERIOR COURT FOR STEVENS COUNTY, *D. H. Carey, Judge, Respondent.*[1]

DRAINS (9)—PETITION—AMENDMENT—DISCRETION. It is proper to allow an amended petition in drainage proceedings, where opportunity is given to meet any new issue raised.

COURTS (40)—POWER TO CORRECT ERRORS—VACATION OF ORDER— JURISDICTION. In proceedings to establish a drainage district, an order mistakenly or inadvertently made may be set aside and the matter reopened for a further hearing, and prior orders corrected.

DRAINS—ESTABLISHMENT—PROCEEDINGS—PRACTICABILITY OF IM-PROVEMENT—EVIDENCE—STATUTES. Rem. Comp. Stat., § 4310, requiring a preliminary determination as to whether a proposed drainage system is "practicable," has reference to its practicability from an engineering standpoint, that is, whether it will drain the land, rather than from a business or commercial point of view; although the same word in § 4312, covering assessments and benefits and requiring dismissal of the proceedings if found not "practicable" may have been used in the latter sense.

Application filed in the supreme court March 17, 1924, for a writ of certiorari to review orders of the superior court for Stevens county, Carey, J., entered February 20, 1924, and March 3, 1924, in proceedings to establish a drainage district. Denied.

*L. B. Donley, Berkey & Cowan, Sydney A. Cryor,* and *Hamblin & Gilbert,* for relator.

FULLERTON, J.—In 1922, certain inhabitants and freeholders of Stevens county, owning lands bordering upon and adjacent to the Colville river in that county, organized a drainage district, the object and purpose of which was to straighten and increase the

[1]Reported in 228 Pac. 842.

depth of the channel of the river named for the better drainage of their lands. As no question is made as to the regularity of the proceedings, it is not necessary to set them forth in detail. It is sufficient to say that a board of drainage commissioners was duly elected, that this board caused plans and specifications of the proposed improvement to be made, made an estimate of the cost thereof, and filed a petition in the superior court of the county in which the district is situated, for the purpose of acquiring the property necessary for the construction of the improvement, and of ascertaining the damages and benefits to the land affected.

The statute governing the proceedings to be had on the hearing of the petition in the superior court is found at § 4310 of the code (Rem. Comp. Stat.) [P. C. § 1947-12], and reads as follows:

"Any or all of said defendants may appear jointly or separately and admit or deny the allegations of said petition and plead any affirmative matter in defense thereof at the time and place appointed for hearing said petition, or to which the same may have been adjourned. If the court or judge thereof shall have satisfactory proof that all of the defendants in said action have been duly served with said summons, as above provided, and shall be further satisfied by competent proof that said improvement is practicable and conducive to the public health, welfare and convenience, and will increase the value of said lands for the purpose of public revenue, and that the contemplated use for which the land, real estate, premises or other property sought to be appropriated is really a public use, and that the land, real estate, premises or other property sought to be appropriated are required and necessary for the establishment of said improvement, and that said improvement has a good and sufficient outlet, the court or judge thereof shall cause a jury of twelve qualified persons to be impaneled to assess the damages and benefits, as herein provided, if in attend-

ance upon his court; and if not he may, if satisfied
that the public interests require the immediate con-
struction of said improvement, direct the sheriff of
his county to summons from the citizens of the county
in which petition is filed as many qualified persons as
may be necessary in order to form a jury of twelve
persons, unless the parties to the proceedings consent
to a less number, such number to be not less than
three, and such consent shall be entered by the clerk
in the minutes of the trial. If necessary, to complete
the jury in any case, the sheriff, under the directions
of the court or the judge thereof shall summon as
many qualified persons as [may] be required to com-
plete the jury from the citizens of the county in which
the petition is filed. In case a special jury is sum-
moned the cost thereof shall be taxed as part of the
cost in the proceedings and paid by the district seek-
ing to appropriate said land, the same as other costs
in the case; and no person shall be competent as a
juror who is a resident of, or land owner in, the district
seeking to appropriate said land. The jurors at such
trial shall make in each case a separate assessment
of damages which shall result to any person, corpora-
tion or company, or to the state, by reason of the ap-
propriation and use of such land, real estate, premises
or other property for said improvements and shall
ascertain, determine and award the amount of dam-
ages to be paid to said owner or owners, respectively,
and to all tenants, encumbrancers and others inter-
ested, for the taking or injuriously affecting such land,
real estate, premises or other property for the estab-
lishment of said improvement; and shall further find
a maximum amount of benefits per acre to be derived
by each of the land owners, and also the maximum
amount of benefits resulting to any municipality, pub-
lic highway, corporate road, or district from construc-
tion of said improvement. And upon a return of the
verdict into court the same shall be reported as in
other cases; whereupon, a decree shall be entered in
accordance with the verdict so rendered setting forth
all the facts found by the jury, and decreeing that said

right of way be appropriated, and directing the com-
missioners of said drainage district to draw their war-
rant on the county treasurer for the amount awarded
by the jury to each person for damages sustained by
reason of the establishment of said improvement, pay-
able out of the funds of said drainage district.''

The first hearing was had on the petition on June 16,
1923. At this hearing certain landowners appeared
and opposed the scheme, and evidence was taken upon
the practicability of the system of drainage proposed,
at the conclusion of which the following order was
entered:

''It is hereby ordered that said system of drainage
as proposed in said petition and as shown by the proof
on said hearing does not appear to be practicable and
sufficient for the purposes for which it is intended and
that the same be and it is hereby rejected, and that
plaintiff have and it is hereby given leave to file an
amended petition herein, said petition to be filed on or
before the 1st day of November, 1923.''

Within the time appointed, an amended petition
was filed, which came on for hearing before the court
on February 20, 1924. At this hearing the opposing
landowners objected to any further proceedings on
the ground that the first order was determinative of
the cause, the court having found therein that the pro-
posed system was not practicable. The court over-
ruled the objection, and entered an order reciting that
the first order ''was signed and entered through in-
advertence, no such order at any time having been
made by the above entitled court touching the practica-
bility of Drainage District No. 4 [the district in ques-
tion] or its plans and improvements,'' and entered an
order setting aside the prior order in so far as it
found the scheme of improvement to be impracticable.
A further hearing was then had thereon, at the con-

clusion of which the court entered an order in which it found affirmatively upon all the matters required to be determined by the provisions of the section of the statute quoted. The court thereupon continued the cause to a day certain "for the setting of the cause for trial for the determination and assessment of damages and benefits resulting from the construction of said proposed improvements and for the calling of a jury to try said cause in the manner provided by law."

The proceedings before us arise upon an original application made to this court to review the orders of the trial court above set forth.

The objectors suing out the writ of review first assign that the court erred in permitting the board of drainage commissioners to file an amended petition, and erred in setting aside its original finding to the effect that the contemplated scheme of improvement was impracticable. It is our opinion, however, that these objections are not tenable. With reference to pleadings in causes of this nature, the general practice act is applicable, and under that act amendments are allowed almost as a matter of course. While the question whether or not an amendment will be allowed is within the sound discretion of the trial court, abuse of the discretion, under the liberal provision of the statutes, is usually more likely to happen by a denial of the request than by its granting. Of course, the rights of the opposing party must at all times be protected. He must be given an opportunity to meet any new issue the amendment may raise, and is usually entitled to such costs as the allowance of the amendment will impose upon him. Here, there was nothing of these sorts. No hardship was imposed on the objectors, and we see no reason for holding the order erroneous.

The second branch of the objection, we think, is like-

wise untenable. Doubtless, had the court, after finding
that the scheme was impracticable, entered a judg-
ment of dismissal, it could not have proceeded with
the cause further unless the order was reversed on ap-
peal, or was set aside by the court itself for mistake,
inadvertence, surprise, excusable neglect, or some
other statutory cause, instituted for that express pur-
pose. But the court did not dismiss the proceeding.
It retained the cause for further hearing. It was,
therefore, within its powers to correct any of its prior
orders, whether the result of inadvertence or of a
mistaken view of the rule of law applicable to the sit-
uation. As we said in *State v. Riley,* 36 Wash. 441,
78 Pac. 1001:

"If the trial court finds, at any stage of the proceed-
ings prior to the entry of final judgment, that it has
committed an error that will render its final judgment
voidable or void, it is not only its right but its duty to
correct it."

See, also: *Balfour-Guthrie Inv. Co. v. Geiger,* 20
Wash. 579, 56 Pac. 370; *Shephard v. Gove,* 26 Wash.
452, 67 Pac. 256; *Ernst v. Fox,* 26 Wash. 526, 67 Pac.
258; *State ex rel. Brown v. Board of Dental Examiners,*
38 Wash. 325, 80 Pac. 544; *Toutle Logging Co. v. Ham-
mond Lum. Co.,* 78 Wash. 568, 139 Pac. 625.

The further contention is that the court erred in
rejecting certain evidence offered by the relators. It
will be observed from the provisions of the statute
which we have quoted that one of the questions the
court is required to determine on the preliminary
hearing is whether the contemplated improvement is
"practicable." In the course of the hearing, the ob-
jectors offered testimony tending to show that the cost
of the improvement would exceed the estimated cost
made by the board of drainage commissioners, and

would exceed any possible benefits to the lands. They also introduced testimony tending to show that the land which is now subject to annual overflow by the river, had an uneven surface, was "full of sloughs and pot holes," and would require leveling before it could be cultivated, and that a great part of it was covered with a heavy growth of brush. They then offered testimony to the effect that it would cost from $100 to $125 per acre to level and clear the land so as to put it in condition for cultivation; further offering to show that cleared and cultivated land in the Colville valley, of like kind and quality and as favorably situated as is this land, was then selling at a price of from $75 to $100 per acre. The court declined to receive the proffered testimony; holding that this was not what is meant by the term "practicable" as used in the statute; that the term meant rather practicability from an engineering standpoint than practicability from a business or commercial point of view; offering to allow the objectors to introduce any evidence which tended to show that the planned system of drainage when completed would not accomplish the purpose intended; that is to say, "drain the lands," but that further than this he would not permit them to go.

The term "practicable," as defined by the lexicographers, has a number of meanings, and it is a term frequently used in statutes, not always with the same meaning. The courts in construing it have given it that meaning indicated by the general text of the act in which it is found and the evident purposes the legislature had in view. Illustrations will be found in the following cases: *United States v. Wise,* 7 Fed. 190; *The Benton,* 51 Fed. 302; *Wilcox v. Supreme Council of Royal Arcanum,* 66 Misc. Rep. 253, 123 N. Y. Supp. 83; *Rizer v. People ex rel.,* 18 Colo. App. 40, 69 Pac.

315; *Mayo v. Thigpen,* 107 N. C. 63, 11 S. E. 1052; *Williams v. Rittenhouse & Embree Co.,* 198 Ill. 602, 64 N. E. 995; *Joynes v. Pennsylvania R. Co.,* 234 Pa. St. 321, 83 Atl. 318; *Pittsburg C., C. & St. L. R. Co. v. Indianapolis, C. & S. Traction Co.,* 169 Ind. 634, 81 N. E. 487; *Wooters v. International & G. N. R. R. Co.,* 54 Tex. 294.

The cases in themselves, however, do not teach much. The facts and circumstances are so widely variant in each that the rule applicable to the one has but very little bearing in determining what rule should be applied to another. The legislature has used the word in two separate sections of the drainage act, once in the quoted section and once in § 4312, Rem. Comp. Stat. [P. C. § 1947-14], which reads as follows:

"In case the damages or amount of compensation for such right of way, together with the estimated costs of the improvement, amount to more than the maximum amount of benefits which will be derived from said improvement, or, if said improvement is not practicable, or will not be conducive to the public health, welfare and convenience, or will not increase the public revenue, or will not have sufficient outlet, the court shall dismiss such proceedings, and in such case a judgment shall be rendered for the costs of said proceedings against said district, and no further proceedings shall be had or done therein; and upon the payment of the costs, said organization shall be dissolved by decree of said court."

It will thus be seen that the trial court is required to pass upon the practicability of the scheme at two separate stages of the proceedings, once at the preliminary hearing and then again after he has taken the verdict of the jury on the question of damages and benefits. While the statute is tautological, it may be that the legislature has used the term "practicable" in the second of the quoted sections in a different

sense than it has used it in the first, and it may be that the legislature has intended that the court, when it can view the scheme of improvement in the light of the verdict of the jury, shall pass upon the practicability of the scheme in a business or commercial sense, yet we think this is not its duty at the first or preliminary hearing. In our opinion, it is sufficient at that hearing to find that the scheme as proposed will accomplish the purpose intended, that is to say, will, to use the language of the trial judge, "drain the lands."

It follows that there was no error in excluding the proffered testimony.

Judgment affirmed.

MITCHELL, TOLMAN, BRIDGES, and PEMBERTON, JJ., concur.