[No. 36109. Department One. September 20, 1962.]

WASHINGTON MUTUAL SAVINGS BANK, *Respondent,* v. BALLARD FEDERAL SAVINGS AND LOAN ASSOCIATION OF SEATTLE *et al., Defendants,* WASHINGTON FEDERAL SAVINGS AND LOAN ASSOCIATION OF SEATTLE, *Appellant.*\*

\*Reported in 374 P. (2d) 563.

*Matsen, Clark, Cory & Matsen* (*Clyde R. Cory Jr.,* of counsel), for appellant.

*Garvin, Ashley & Foster* and *Paul P. Ashley,* for respondent.

HILL, J.—Contrary to our usual custom, instead of beginning by saying what this action is about, we begin by saying what it is not. It is not, in any sense, a controversy as to the merits of mutual savings banks or of savings and loan associations; both types of financial institutions are entitled to "point with pride"; each serves an important but distinctive purpose.

We are concerned with a phase of an action, commenced in 1958, in which the Washington Mutual Savings Bank (long established and well known in Seattle) sought an injunction to restrain the Ballard Federal Savings and Loan Association of Seattle and the Washington Federal Savings and Loan Association of Bothell (then contemplating a merger) from using the name "Washington Federal Savings and Loan Association" after their merger. The basis of the action was that the use of the name would constitute unfair competition.

By a decree entered July 14, 1958, the trial court (while refusing the injunction) recognized the possibility of confusion to the public and resulting unfair competition, unless the distinctions between the savings bank and the savings and loan association were emphasized for the benefit of the public, and entered the following decree:

"IT IS FURTHER ORDERED, ADJUDGED AND DECREED, that the defendants in the use of the name 'Washington Federal Savings and Loan Association of Seattle,' or in referring to its business shall give at least the same prominence to the word 'Federal' as to any other word in the phrases, 'Washington Federal' or 'Washington Federal Savings,' and shall not use the word 'Washington' without the word 'Federal.' That in its use of the words 'Washington Federal Savings and Loan Association,' and in their printed matter and publicity the defendants shall also use the words 'Loan

Association,' (or Loan Ass'n.), in a size easily discernible in relation to the nature and size of the advertisement, letter head, billboard, or other publicity considered as a whole, except when commercially impracticable or not feasible mechanically e.g. illuminated signs. That the word 'Mutual' shall not be used by said resulting association in or near the name, 'Washington Federal Savings and Loan Association,' or the phrases, 'Washington Federal' or 'Washington Federal Savings,' in such a manner as to simulate the plaintiff's name, provided however, that the word 'Mutual' may be used by said resulting association to describe the type of corporate organization, of the Washington Federal Savings and Loan Association of Seattle."

The decree further provided that the "Defendants shall not Simulate or Copy plaintiffs style of Advertising."

From this decree there was no appeal.

In December 1960, the Washington Mutual Savings Bank filed a petition for an order directing the Washington Federal Savings and Loan Association (the merger having been consummated) to show cause why it should not be adjudged to be in contempt for violations of the decree of July 14, 1958. From a decree of March 24, 1961, making such an adjudication, this appeal is taken.

The trial court found, *inter alia,* that the Washington Federal Savings and Loan Association had violated the 1958 decree in many ways, among which are the following:

"(a) Failing to use the words 'Loan Association' in an easily discernible size in relation to billboards as shown by Exhibits 4, 5, 6 and 7.

"(b) Failing to use the words 'Loan Association' at all on billboards as shown by Exhibits 8, 10, 79 and 81.

"(c) Failing to use the words 'Loan Association' in each instance where the words 'Washington Federal Savings' are used in advertisements as shown by Exhibits 14 through 22.

"(d) While the defendant has not completed its new downtown branch, it seems certain that unless controlled, the defendant will violate the 1958 decree as shown by Exhibit 36."[1] (From Finding of Fact No. 4)

[1] We have disregarded (d) as support for the judgment that the defendant was guilty of contempt, as there is no necessity to consider "anticipatory contempt."

Findings (a), (b), and (c), collectively and individually, are sufficient to support the conclusion that the appellant was in contempt of court for its violations of the 1958 decree. The trial court, justifiably incensed at palpable violations of the decree, suggested a fine of $2,500 as proper. However, the fine actually imposed was $100, the statutory limit in a civil contempt of this character.[2]

The appellant urges that it should not be punished for contempt, because the decree is ambiguous and subject to more than one interpretation.

 It is clear to this court that the trial court, in its 1958 decree, had the obvious intent that the public should always be aware that the respondent and appellant are institutions of different types; that the former is a savings bank and the latter a savings and loan association. The court's concern was, and is, that the public be not confused. Before entering its 1958 decree, the trial court found

"That the names, 'Washington Mutual Savings Bank' and 'Washington Federal Savings and Loan Association,' when taken in their entirety are dissimilar and persons of ordinary caution dealing in financial matters are not confused by these names. . . ." (Finding of Fact No. 12)

For this reason it refused to enjoin the use of the name "Washington Federal Savings and Loan Association," but to prevent possible confusion the decree provided that the appellant,

" . . . in its use of the words 'Washington Federal Savings and Loan Association,' and in their printed matter and publicity the defendants shall also use the words 'Loan Association,' (or Loan Ass'n.), in a size easily discernible in relation to the nature and size of the advertisement, letterhead, billboard, or other publicity. . . ."

---

[2]"Every court of justice, and every judicial officer has power to punish contempt by fine or imprisonment, or both. But such fine shall not exceed three hundred dollars, nor the imprisonment six months; and when the contempt is not of those mentioned in RCW 7.20.010(1) and (2), it must appear that the right or remedy of a party to an action, suit or proceeding was defeated or prejudiced thereby, before the contempt can be punished otherwise than by a fine not exceeding one hundred dollars." RCW 7.20.020

Since it was required that "Loan Association" be printed in an easily discernible size, it must be concluded that the court intended those words to be present, except where their omission was expressly authorized. If it had not been intended to have the words "Loan Association" included when the name was used, there would have been no meaning in requiring that they be printed in "a size easily discernible." The obvious intent was that the public would always be aware that this was a savings and loan association.

Assignment of error No. 4 attacks a finding of the trial court emphasizing the distinction between the two types of institutions. As indicated, the trial court said the same things in its July 1958 decree; but inasmuch as the appellant was seemingly intent on evading that order, the trial court, in 1961, made its purpose so clear that even the evasive minded must understand.

There is no merit in the appellant's attempt to excuse its violation of the 1958 decree on the basis that it was ambiguous. There was but one reasonable interpretation. Neither do we find any merit in appellant's contention: That its dropping of the words "and Loan Association" in its advertising (in the exhibits enumerated in the finding) was justified by the exception permitted by the 1958 decree. To again quote the decree:

". . . That in its use of the words 'Washington Federal Savings and Loan Association,' and in their printed matter and publicity the defendants shall also use the words 'Loan Association,' (or Loan Ass'n.), in a size easily discernible in relation to the nature and size of the advertisement, letterhead, billboard, or other publicity considered as a whole, except when commercially impracticable or not feasible mechanically e.g. illuminated signs. . . ."

This was no grant of general permission to use "Washington Federal Savings," as an abbreviation of the name "Washington Federal Savings and Loan Association." The trial court made it clear, in that decree, that the abbreviation was not to be used in its advertising, correspondence, and the like, "except when commercially impracticable or not feasible mechanically e.g. illuminated signs." (It is

clear from the record that the trial court was referring to neon signs.)

The appellant's foray into semantics to find new concepts of what is "practicable"—from cases involving the elimination of grade crossings (*State ex rel. Spokane International R. Co. v. Kuykendall* (1924), 128 Wash. 88, 222 Pac. 211), or the establishment of drainage districts (*State ex rel. Granite Inv. Co. v. Superior Court, Stevens Cy.* (1924), 131 Wash. 20, 228 Pac. 842)—does not persuade us that the inclusion of the words "and Loan Association" are so oppressive as to be "commercially impracticable" in any of the instances which the trial court found to be in violation of its order.

We not only affirm the contempt judgment, but we agree with the trial court that the evidence sustains its finding of fact No. 5: That the appellant had simulated the respondent's style of advertising by adopting a bust of George Washington (as shown on exhibit No. 8) as its symbol; and that portion of the decree restraining and enjoining that simulation is specifically affirmed.

The appellant urges that since the respondent made no allegation, in its petition for an order to show cause, that the use of Washington's bust or head simulated the respondent's advertising, the trial court should not have considered this particular matter.

The petition for an order to show cause, after setting out certain specific violations of the decree of July 14, 1958, alleged that the decree had been violated in "Other ways to be proved at the hearing on this petition."

Appellant made no effort to have the allegation particularized and, itself, tendered the issue to the court with a proposed finding (No. 5) "That the defendant has not simulated or copied the plaintiff's style of advertising"; and, again, with a provision in its proposed decree:

"It Is Further Ordered, Adjudged and Decreed that the defendant is not restrained and enjoined from utilizing the head or bust of George Washington as a trade symbol in the manner that it has been using said symbol; . . . "

This issue was before the trial court; and it rejected appellant's proposed finding and decree, and made the finding and entered the decree of which the appellant now complains. As we have heretofore stated, the evidence sustains the finding that the appellant has simulated the respondent's style of advertising. Such simulation was not made the basis of the adjudication for contempt at this time, but its continuation was properly enjoined.

We find no prejudicial error in any of the appellant's six assignments of error, which are argued; the seventh, relating to costs, is not argued and, hence, not considered.

The decree appealed from is affirmed.

FINLEY, C. J., WEAVER, ROSELLINI, and FOSTER, JJ., concur.