[No. 38803.   En Banc.   May 9, 1968.]

ROBERT H. MILLER *et al., Respondents,* v. THE STATE OF
WASHINGTON *et al., Appellants.*\*

*The Attorney General, Herbert Gelman, Special Assistant,* and *Robert F. Hauth, Assistant,* for appellants.

*Brodie, Fristoe & Taylor* and *Hamblen, Gilbert & Brooke,* for respondents.

HALE, J.—Light bulbs are no trifling matter to the state of Washington. The state buys nearly $300,000 worth each biennium—and the amount will increase steadily in the future. A brace of taxpayers now claim that the state must procure its light bulbs through competitive bid instead of negotiated contracts, the means currently employed.[1]

In 1957, through its Department of General Administration, the state called for competitive bids to supply it with

\*Reported in 440 P.2d 840.

[1]This case was consolidated for argument only with *Savage v. State,* No. 39126, involving essentially the same parties, but different contracts. The opinions in the two cases will be separately issued.

all of the light bulbs required during a 12-month period. About 12 firms put in bids. Platt Electric Supply, Inc., in Seattle, with main offices in Portland, Oregon, won the contract with the lowest and best bid, and the state executed with that company an agreement designated as "General Contract No. 184—Agreement for the Purchase of Ken-Rad Brand Westinghouse Lamps." This contract, effective February 1, 1958, had a 1-year term.

Thereafter, instead of putting the light bulb purchases up for competitive bids, the state has regularly renewed this 1958 contract No. 184 with Platt Electric Supply Company by negotiation. Officials in the Department of General Administration maintain that they have consistently obtained lower prices and better service for the state by negotiation than could have been done through competitive bidding, but the trial court, on conflicting evidence, found contra.[2] Price catalogs issued by three of the nation's major light bulb manufacturers and evidence concerning the prices paid by several cities provided a basis for the court's findings.

Plaintiff taxpayers brought this action against both the state and the Director of the Department of General Administration, seeking an injunction to prohibit the state from extending or renewing lamp "General Contract No. 184—Agreement for the Purchase of Ken-Rad Brand Westinghouse Lamps." From a judgment and decree granting plaintiffs the relief prayed for in the Superior Court for Thurston County, the state appeals.

The state contends that the statutes relating to competitive bidding give it a latitude to negotiate contracts for the

---

[2]"That the discounts contained in said lamp contract No. 184 are substantially less then discounts presently available from a number of suppliers in the State of Washington, and that the Platt Electric Supply, Inc., gives higher discount rates in a number of instances to users under somewhat similar contracts, including the City of Seattle, City of Tacoma, the County of Multnomah School District, the State of Oregon and the Directors of King County. That the State of Washington is not receiving the advantage of the best available prices, including discounts, in the purchases of lamps under contract No. 184." Finding of fact 6.

purchase of state supplies, or to renew by negotiation contracts reached through competitive bids because the statute directs that purchases be made by competitive bidding only *insofar as practicable.* Thus, it is contended, the Department of General Administration need not call for competitive bids when in its judgment to do so would be impracticable.

The purchase of material, supplies and equipment needed for the support of all state institutions, colleges, universities, offices and installations, represents a complicated undertaking. To carry on this never-ending and constantly recurring business, the legislature created special agencies, establishing a Division of Purchasing under the Director of General Administration (RCW 43.19.190), and a State Purchasing Committee appointed by the Governor (RCW 43.19.1902). RCW 43.19.1904 requires the standards and specifications for all categories of purchases to be reviewed and approved by the State Purchasing Committee. Unless the purchases fall within three specific exemptions, or competitive bidding proves manifestly impracticable, all purchases by the state must be on competitive bids under RCW 43.19.1906, which says:

> *Insofar as practicable,* all purchases and sales shall be based on competitive bids and a formal sealed bid procedure shall be used as standard procedure for all purchases and contracts for purchases and sales executed by the director of general administration through the division of purchasing and under the powers granted by RCW 43.19.190 through 43.19.1939: *Provided,* That sealed competitive bidding shall not be necessary for:
>
> (1) Emergency purchases if such sealed bidding procedure would prevent or hinder the emergency from being met appropriately; and
>
> (2) Purchases not exceeding five hundred dollars but in all such purchases quotations shall be secured from enough vendors to assure establishment of a competitive price; and
>
> (3) Purchases which are clearly and legitimately limited to a single source of supply and purchases involving special facilities, services or market conditions, in which

instances the purchase price may be best established by direct negotiation. (Italics ours.) RCW 43.19.1906.

Since the instant contract is not an emergency purchase, does exceed $500 in content, and does involve more than a single source of supply, the exemptions set forth in the foregoing section do not apply. This leaves for our interpretation the matter of practicability arising from the language of the statute which says *all* purchases shall be based on competitive bids according to a prescribed bid procedure *insofar as practicable*. RCW 43.19.1906.

█ That the statute places a heavy duty upon the state's agents to overcome and solve the manifest difficulties of calling for and canvassing competitive bids is shown in the universal approval given by the courts and text authorities to the idea of competitive bidding in government. Competitive bidding is widely heralded among most authorities as a device to promote economy in government, prevent fraud, favoritism, extravagance and collusion, and to provide equal opportunities among all who would do business with the state (43 Am. Jur. *Public Works and Contracts* § 26 (1942)), insuring by "competition in bidding, [that] the public may recieve the benefit of the greatest possible value for the least expenditure." *Reiter v. Chapman*, 177 Wash. 392, 31 P.2d 1005, 92 A.L.R. 828 (1934). See, also, *Foley Bros., Inc. v. Marshall*, 266 Minn. 259, 123 N.W.2d 387 (1963). Our interpretation, then, must approach the statute from the standpoint that the legislature, in enacting the statute, fully intended to secure to the state the numerous benefits thought to derive from publicly announced competitive bidding.

The legislature categorically declared that all state purchases except those specifically exempt must, if practicable, be on competitive bids. In a finding conspicuously supported by the evidence, the trial court found it was not impracticable for the state to purchase its light bulb supplies through competitive bidding, obviously, in doing so, giving to the term *practicable* its ordinary meaning.

Merriam-Webster Third International Dictionary (1964),

defines *practicable* as "possible to practice or perform: capable of being put into practice, done, or accomplished: feasible."

The word *feasible* is defined in the same dictionary as "capable of being done, executed, or effected: possible of realization . . . capable of being managed, utilized, or dealt with successfully."

Accepting these dictionary definitions as the ordinary meaning of the term and applying them now in the term's statutory context, it appears that *practicable* means a practice that is feasible, or a procedure capable of being put into practice. Thus, if an undertaking, procedure, or thing is possible to practice or perform or is capable of attainment or accomplishment, it is practicable.

We note that in *State ex rel. Spokane Int'l Ry. v. Kuykendall*, 128 Wash. 88, 222 Pac. 211 (1924), this court agreed with *Pittsburgh, C., C. & St. L. Ry. v. Indianapolis, Columbus & S. Traction Co.*, 169 Ind. 634, 81 N.E. 487 (1907), that the word *practicable*, as used in a statute then under consideration, was not, as the modern dictionary would have it, synonymous with *possible* for the reason that, in dealing in that case with an engineering project, "A thing practicable must necessarily be possible, but a thing may be possible that is not practicable." And in the context of those facts and circumstances, we would adhere to that statement, but that case has only a remote application to the statute under review.

In the competitive bidding statute (RCW 43.19.1906) now before us, the term *practicable* is, as suggested in *State ex rel. Spokane Int'l Ry. v. Kuykendall, supra,* not synonymous with *possible* because, among other reasons, to so regard it would create a redundancy. Obviously, the legislature did not intend to rule out only the *impossible,* but rather the *impracticable* as well. It intended that, if it is practicable to call for bids, the state must call for bids. Only if it is impracticable to do so—unless coming within the three specifically described exemptions—is the state relieved of the duty of buying on competitive bids. In this context, *imprac-*

*ticability* may approach *impossibility* but need not reach it to exonerate the state of the duty to call for competitive bids.

The record shows no basis for the court to find that the purchase of light bulbs by the state through competitive bidding would be impracticable. On the contrary, it abundantly supports the trial court's ultimate conclusion that calling for competitive bids under the statutory procedure would have been and is readily feasible and that the Department of General Administration, therefore, under RCW 43.19.1906, was required to do so. Renewals of contract No. 184 by negotiation instead of competitive bidding are, therefore, void.

Affirmed.

FINLEY, C. J., HILL, WEAVER, ROSELLINI, HUNTER, HAMILTON, and NEILL, JJ., concur.

July 16, 1968. Petition for rehearing denied.