**BROWNING–FERRIS INDUSTRIES OF TENNESSEE, INC., Plaintiff-Appellee,**

v.

**CITY OF OAK RIDGE and Tennessee Industrial Disposal, Inc., Defendants-Appellants.**

Court of Appeals of Tennessee, Eastern Section.

Sept. 17, 1982.

Rehearing Denied Oct. 1, 1982.

Permission to Appeal Denied by Supreme Court Jan. 17, 1983.

Stephen A. Irving of Lawson and Irving, P.A., Oak Ridge, for defendant-appellant Tenn. Industrial Disposal, Inc.

John H. Harris, Jr., of Harris, Shelton, Dunlap & Cobb, Memphis, Eugene L. Joyce and Thomas N. Depersio of Joyce, Anderson & Meredith, Oak Ridge, for plaintiff-appellee.

## OPINION

FRANKS, Judge.

The principal issue on appeal is whether an extension of a contract for refuse services entered between the defendant city and co-defendant Tennessee Industrial Disposal, Incorporated (Tidi), violated the competitive requirements of the city's charter and ordinances.[1]

The chancellor at the instance of the plaintiff, Browning-Ferris Industries of Tennessee, Inc., (BFI) entered summary judgment invalidating the contract and awarding BFI the sum of $1,910.00 for its reasonable expenses for preparing and presenting its bid, which was the low bid rejected by the city.

In 1976, the city, pursuant to its competitive bidding ordinance, entered a contract for refuse services with Tidi for a period of 5 years and, in August, 1980, the city issued invitations to submit bids on a new 5-year contract.

In response to the invitation, three bids were submitted, including bids by BFI and Tidi. At the bid opening, BFI was the low bidder and subsequently the city council decided to reject all bids and executed an extension of the 1976 contract with Tidi. In executing the extension, the city acted pursuant to a provision of the 1976 contract which provides:

Article XXXIV—*Negotiation.* Upon the expiration of this Contract or such earlier time as the parties may desire, the City and the Contractor shall be authorized to negotiate for:

a. An extension of this Contract for one, two or more years.

This suit resulted, wherein BFI insisted the city's action in executing the extension with Tidi was a violation of the competitive bidding ordinance and sought to recover the amount of its expenses in bid preparation.

The threshold issue raised by the defendants in trial court is the issue of plaintiff's standing to sue.

While there is a split of authority[2] on whether a low bidder has standing to sue the governmental authority for its failure

---

1. The requirements for competitive bidding procedures are set out in the city's charter which provides:

    Competitive prices for all purchases and public improvements shall be obtained whenever practicable and in accordance with regulations established by ordinance, and the purchases made from or the contract awarded to the lowest responsible bidder.

    And its ordinance provides:

    Competitive bids on all supplies, materials, equipment, and services, except those specified elsewhere in this article, and contracts for public improvements shall be obtained, whenever practicable, and the purchase or contract awarded to the lowest responsible bidder.

2. Courts denying standing to the low bidder hold the competitive bidding statutes are for the benefit of the public and confer no rights on individual bidders. *See e.g., Estey Corporation v. Matzke,* 431 F.Supp. 468 (N.D.Ill.1976); *Pioneer Co. v. Hutchinson,* 220 S.E.2d 894 (W.Va. 1975).

to comply with competitive bidding requirements, the better reasoned view in our opinion is the low bidder has standing to raise the issue. *Owen of Georgia, Inc. v. Shelby County,* 648 F.2d 1084 (6th Cir.1981); *Kinnett Dairies, Inc. v. J.C. Farrow,* 580 F.2d 1260 (5th Cir.1978); *Funderburg Builders, Inc. v. Abbeville County Memorial Hospital,* 467 F.Supp. 821 (D.S.C.1979); *Quincy Ornamental Iron Works, Inc. v. Findlen,* 353 Mass. 85, 228 N.E.2d 453 (1967).

In *Owen of Georgia, Inc.,* the Sixth Circuit, relying on analogous Tennessee decisions, determined that an unsuccessful low bidder for a steel contract for a county criminal justice building had standing to challenge the county's award of the contract to another bidder. 648 F.2d, at 1090. Our courts have extended standing to private citizens in actions against public officials where the citizen can show special interest or injury not common to the general public. *Bennett v. Stutts,* 521 S.W.2d 575 (Tenn.1975); *Patton v. Chattanooga,* 108 Tenn. 197, 65 S.W. 414 (1901). Extending standing to a low bidder on a public works contract is consistent with this concept.

In *Village of Arlington Heights v. Metropolitan Housing Development Corp.,* 429 U.S. 252, 97 S.Ct. 555, 50 L.Ed.2d 450 (1977), the United States Supreme Court articulated the standing test as:

> The essence of the standing question, in its constitutional dimension is "whether the plaintiff has 'alleged such a personal stake in the outcome of the controversy' [as] to warrant *his* invocation of federal-court jurisdiction and to justify exercise of the court's remedial powers on his behalf." [Emphasis original.] [Citation omitted.] The plaintiff must show that he himself is injured by the challenged action of the defendant. The injury may be indirect [citations omitted] but the complaint must indicate that the injury is indeed fairly traceable to the defendant's acts or omissions.

*Id.,* at 260–1, 97 S.Ct. at 561.

In the instant case, BFI has shown an economic injury which is traceable to the conduct of the City of Oak Ridge and therefore meets the requirements for standing.

■ Finally, on this issue, Tidi argues according standing to BFI is an unwarranted and wrongful extension of the Rules of Civil Procedure. However, the doctrine of standing is not governed by the rules but is a judicially created doctrine. *Knierim v. Leatherwood,* 542 S.W.2d 806 (Tenn.1976).

■ On the principal issue, Tidi argues the city exercised a right to extend the contract under a provision in the original contract which authorized negotiations for an extension. Courts have, however, drawn a distinction between a provision in a public contract giving the governmental entity a right to extend the duration of a contract under identical terms and a provision which merely authorizes further negotiations. The latter is inoperable where the contract is subject to competitive bidding. This distinction is contrasted in two cases decided by the Washington Supreme Court. In *Miller v. State,* 73 Wash.2d 790, 440 P.2d 840 (1968), the state purchasing office had obtained by competitive bidding a contract for supply of light bulbs. Thereafter the state renewed the contract by negotiation and the court held that the state must use competitive bidding and the subsequent contract by negotiation violated the statute and was void. *Id.,* 440 P.2d at 842.

The court reached a different result in *Savage v. State,* 75 Wash.2d 618, 453 P.2d 613 (1969). *Savage* also involved a state purchase contract; however, the contract contained an option provision whereby the state could extend the duration of the purchase agreement for successive one-year periods to a maximum of three additional years. The court, in distinguishing *Miller,* held the contract in *Savage* was for one, two, three or four years at the sole option of the state and did not violate bidding statutes because new, successive contracts were not created; instead, the duration of the single contract extended at the option of the state with all terms remaining the same; moreover, the court emphasized the renewal provision must clearly be an option

clause rather than a negotiation provision. *Accord: City of Lakeland v. Union Oil Co. of California*, 352 F.Supp. 758 (M.D.Fla. 1973).

■ Competitive bidding requirements are strictly construed against the governing authority, *Consentino v. City of Omaha*, 186 Neb. 407, 183 N.W.2d 475 (1971), and in the instant case the contractual provision is clearly not an option. Neither party could compel the other to extend the duration of the 1976 contract under the same terms. The provision is simply an agreement to negotiate; precisely the type of provision which, under the *Miller* analysis, violates the competitive bidding statute.

■ Accordingly, the negotiations of the 1981 contract between the city and Tidi amounted to private negotiations between a bidder and the city. While post-bid negotiations with the lowest competitor bidder are not inconsistent with the policies underlying the bidding statutes, private negotiations with any other bidder directly contravene the purpose of the ordinance. *Fischbach & Moore, Inc. v. New York City Transit Authority*, 79 A.D.2d 14, 435 N.Y.S.2d 984 (1981). *Accord: Platt Electric Supply, Inc. v. City of Seattle*, 16 Wash.App. 265, 555 P.2d 421 (1976).

■ Finally, Tidi argues the city had a right to reject all bids and under these circumstances a summary judgment was improperly granted. While the city reserved the right to reject all bids, the rejection of all bids followed by rebidding is proper; however, rejection followed by private negotiations with one other than the low bidder is inconsistent with the city's ordinance.

■ A contract entered in violation of bidding statutes or ordinances is void and it is not necessary to show that the governmental authority acted in bad faith or fraud was involved. *Johnson City v. Realty Co.*, 166 Tenn. 655, 64 S.W.2d 507 (1933). The validity of the extension of the contract in light of the bidding ordinance is a question of law; we, therefore, conclude a summary judgment was appropriate and we affirm the chancellor.

The cause is remanded, with costs incident to the appeal assessed against the appellant Tidi.

SANDERS and GODDARD, JJ., concur.