FILED
01/28/2019
Clerk of the
Appellate Courts

IN THE COURT OF APPEALS OF TENNESSEE
AT KNOXVILLE
October 16, 2018 Session

## H GROUP CONSTRUCTION, LLC v. CITY OF LAFOLLETTE

Appeal from the Circuit Court for Campbell County
No. 15554     John D. McAfee, Judge

No. E2018-00478-COA-R9-CV

The unsuccessful bidder for certain municipal construction projects filed this action against the municipality, alleging, *inter alia*, that the municipality had violated its own competitive bidding ordinances and engaged in unlawful restraint of trade. The trial court granted summary judgment in favor of the municipality with regard to all claims except the bidder's claim for damages for violation of the municipal ordinances and common law restraint of trade. In this interlocutory appeal, we have been asked to determine whether a cause of action exists against a governmental entity for common law restraint of trade and whether a bidder has a private right of action for damages against the municipality for alleged violations of municipal bidding ordinances. We determine that the municipality maintains sovereign immunity concerning any purported claim of common law restraint of trade. We further determine that because a petition for writ of certiorari would be the sole method of review of the City's contract award, unsuccessful bidders are not authorized to bring a private cause of action for monetary damages for an alleged violation of the municipality's competitive bidding ordinances. Accordingly, we reverse the trial court's denial of the municipality's motion for summary judgment and remand this matter to the trial court for entry of summary judgment in favor of the municipality.

**Tenn. R. App. P. 9 Interlocutory Appeal; Judgment of the Circuit Court
Reversed; Case Remanded**

THOMAS R. FRIERSON, II, J., delivered the opinion of the court, in which D. MICHAEL SWINEY, C.J., and CHARLES D. SUSANO, JR., J., joined.

Benjamin K. Lauderback and Brian R. Bibb, Knoxville, Tennessee, for the appellant, City of LaFollette.

David H. Dunaway, LaFollette, Tennessee, for the appellee, H Group Construction, LLC.

# OPINION

## I. Factual and Procedural Background

H Group Construction, LLC ("HGC") filed a complaint in the Campbell County Circuit Court ("trial court") on October 22, 2013, against the City of LaFollette (the "City"). HGC averred that in September 2012, the City had solicited and received bids for construction and roofing projects for certain buildings owned by the City. HGC submitted one bid for the entire project "based on information otherwise provided by [the City] through its agents, servants, and employees." According to HGC, it had ultimately submitted the lowest total bid. HGC asserted that after advertising the projects for bid as a "package," the City subsequently decided to solicit separate bids for each of the three building projects rather than accepting HGC's bid.

HGC claimed that when the projects were separately rebid, the City awarded two of the three projects to Dixie Roofing, Inc. ("Dixie"), despite the fact that "agents, servants, and/or employees of [Dixie] had previously been employed as the construction manager for these projects." For the third project, involving the City Hall building, HGC purportedly submitted a bid of $312,964.80 while Dixie submitted a bid of $467,013.46. According to HGC, the project was awarded to Dixie even though HGC had submitted a significantly lower bid. HGC thus asserted in its complaint that the City and Dixie had entered into "an arrangement, contract, agreement, or a combination of arrangement between them with a view to lessen or which tends to lessen full and free competition in the State of Tennessee . . . in violation of T.C.A. Section 47-25-101 and T.C.A. Section 47-25-102." HGC averred, *inter alia*, that the City's actions constituted an illegal restraint of trade and breach of contract. HGC also claimed that the City had violated the Tennessee Consumer Protection Act ("TCPA"), the City's charter, and Tennessee's Municipal Purchasing Law. HGC sought a declaratory judgment and an award of damages.

On May 13, 2014, HGC amended its complaint to add specific allegations concerning purported unfair and deceptive practices employed by the City in violation of the TCPA. HGC also added assertions concerning the specific ordinances that it alleged had been violated by the City. HGC further instituted a claim for punitive damages pursuant to the TCPA.

The City subsequently filed an answer, denying all allegations of liability. The City asserted several affirmative defenses, including applicability of the Tennessee Governmental Tort Liability Act. Thereafter, on November 2, 2016, HGC filed a third amended complaint, which contained additional allegations regarding the alleged

2

unlawful actions taken by the City concerning the bids. The City again filed an answer denying HGC's allegations of wrongdoing.

On August 31, 2017, the City filed a motion for summary judgment, positing that there were no genuine disputes of material fact and that the City was entitled to judgment as a matter of law. The City argued that no private right of action existed for monetary damages for violation of Tennessee's Municipal Purchasing Law or the City's municipal ordinances. The City similarly argued that no cause of action existed in Tennessee against a governmental entity for common law restraint of trade. The City further contended that the parties did not have a contract, such that there could be no breach of contract, and that no promises were made or breached by the City. Finally, the City asserted governmental immunity as a defense.[1] The City attached to the motion an affidavit from the former City Administrator, Jimmy Jeffries, as well as minutes from various LaFollette City Council meetings. The City also attached a statement of undisputed material facts.

On December 8, 2017, HGC filed a response to the City's summary judgment motion, as well as a response to the statement of undisputed material facts. The trial court conducted a hearing on the motion on December 14, 2017. On January 18, 2018, the trial court entered an order granting the motion in part and denying it in part. The court noted that HGC's remaining claims consisted of: (1) common law restraint of trade, (2) violations of the municipal purchasing statutes, (3) violations of the City's competitive bidding and purchasing ordinances, (4) breach of contract, (5) promissory estoppel, and (6) a request for equitable or declaratory relief.[2]

By its order, the trial court granted summary judgment in favor of the City with regard to HGC's claims of promissory estoppel, breach of contract, equitable or declaratory relief, and violations of Tennessee's Municipal Purchasing Law. The court denied summary judgment, however, concerning HGC's claims of common law restraint of trade and violation of the City's own ordinances related to the competitive bidding process. The court specifically found that "common law restraint of trade is a viable claim that can be raised against governmental entities in the State of Tennessee." The court further found:

---

[1] In its memorandum submitted in support of the motion for summary judgment, the City also claimed that HGC had performed a previous roofing job for the City and that its work had been "irresponsible and unprofessional." The City thus argued that it had no obligation to accept HGC's bid, even it if represented the lowest price, because HGC was viewed as an "unreliable" contractor that did not comply with the project specifications.

[2] The parties do not dispute that the trial court had previously dismissed some of HGC's original claims although no order of dismissal appears in the appellate record.

[T]he [City's] arguments that governmental entities cannot be sued under the common law for violations of restraint of trade are without merit. This Court acknowledges it has previously dismissed [HGC's] Tennessee Trade Practices Act claim against the [City] at an earlier stage of this litigation. However, this Court now holds that governmental entities in the State of Tennessee can be sued for restraint of trade violations under the common law and that, accordingly, [HGC's] lawsuit under that theory may proceed forward. The Court further finds that the veil of immunity does not extend itself to cover governmental entities for violations of restraint of trade under the common law. This Court further finds that even though the bidding process was for roofing services and not goods, a cause of action exists in Tennessee for a restraint of trade of services under a common law theory of restraint of trade.

The trial court also found that a "private cause of action exists to allow [HGC] to proceed in its claim against the City for the City's purported violations of its own competitive bidding ordinances." The court rejected the City's argument that the appropriate remedy would be a petition for a writ of certiorari review. The court therefore directed that the remaining claims would proceed to trial, "that being whether the [City] restrained trade under common law principles against [HGC] and/or whether the [City] committed an actionable offense against [HGC] by violating its own competitive bidding purchasing ordinances and whether a remedy exists for [HGC] to recover under such a claim."

On February 13, 2018, following entry of the trial court's order denying summary judgment with regard to certain claims, the City filed a motion seeking permission to file an interlocutory appeal with this Court. The trial court granted permission for an interlocutory appeal by order dated March 9, 2018, certifying the issues for appeal as those listed below. This Court similarly granted permission for an interlocutory appeal on May 17, 2018.

## II. Issues Presented

As this Court has previously explained, "[f]or interlocutory appeals, the only issues that can be raised are those certified in the trial court's order granting permission to seek an interlocutory appeal and in the appellate court's order granting the interlocutory appeal." *Heatherly v. Merrimack Mut. Fire Ins. Co.*, 43 S.W.3d 911, 914 (Tenn. Ct. App. 2000). Therefore, this appeal presents the following issues for our review, as certified by the trial court:

4

1.      Whether a cause of action for the common law tort of restraint of trade exists against a governmental entity in Tennessee, and if so, whether that cause of action can be maintained against a governmental entity in a case dealing with the provision of services rather than goods.

2.      Whether the ordinances governing competitive bidding for the City of LaFollette authorize unsuccessful bidders to bring a private right of action for money damages for violation of their terms and/or whether a petition for a writ of certiorari review is the sole remedy.

## III.  Standard of Review

The grant or denial of a motion for summary judgment is a matter of law; therefore, our standard of review is *de novo* with no presumption of correctness. *See Rye v. Women's Care Ctr. of Memphis, MPLLC*, 477 S.W.3d 235, 250 (Tenn. 2015); *Dick Broad. Co., Inc. of Tenn. v. Oak Ridge FM, Inc.*, 395 S.W.3d 653, 671 (Tenn. 2013) (citing *Kinsler v. Berkline, LLC*, 320 S.W.3d 796, 799 (Tenn. 2010)).  As such, this Court must "make a fresh determination of whether the requirements of Rule 56 of the Tennessee Rules of Civil Procedure have been satisfied." *Rye*, 477 S.W.3d at 250.  As our Supreme Court has explained concerning the requirements for a movant to prevail on a motion for summary judgment pursuant to Tennessee Rule of Civil Procedure 56:

We reiterate that a moving party seeking summary judgment by attacking the nonmoving party's evidence must do more than make a conclusory assertion that summary judgment is appropriate on this basis.  Rather, Tennessee Rule 56.03 requires the moving party to support its motion with "a separate concise statement of material facts as to which the moving party contends there is no genuine issue for trial."  Tenn. R. Civ. P. 56.03.  "Each fact is to be set forth in a separate, numbered paragraph and supported by a specific citation to the record."  *Id.*  When such a motion is made, any party opposing summary judgment must file a response to each fact set forth by the movant in the manner provided in Tennessee Rule 56.03.  "[W]hen a motion for summary judgment is made [and] . . . supported as provided in [Tennessee Rule 56]," to survive summary judgment, the nonmoving party "may not rest upon the mere allegations or denials of [its] pleading," but must respond, and by affidavits or one of the other means provided in Tennessee Rule 56, "set forth specific facts" *at the summary judgment stage* "showing that there is a genuine issue for trial."  Tenn. R. Civ. P. 56.06.  The nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus.*

*Co.*, 475 U.S. at 586, 106 S. Ct. 1348. The nonmoving party must demonstrate the existence of specific facts in the record which could lead a rational trier of fact to find in favor of the nonmoving party. If a summary judgment motion is filed before adequate time for discovery has been provided, the nonmoving party may seek a continuance to engage in additional discovery as provided in Tennessee Rule 56.07. However, after adequate time for discovery has been provided, summary judgment should be granted if the nonmoving party's evidence *at the summary judgment stage* is insufficient to establish the existence of a genuine issue of material fact for trial. Tenn. R. Civ. P. 56.04, 56.06. The focus is on the evidence the nonmoving party comes forward with at the summary judgment stage, not on hypothetical evidence that theoretically could be adduced, despite the passage of discovery deadlines, at a future trial.

*Rye*, 477 S.W.3d at 264-65 (emphasis in original). Pursuant to Tennessee Rule of Civil Procedure 56.04, the trial court must "state the legal grounds upon which the court denies or grants the motion" for summary judgment, and our Supreme Court has instructed that the trial court must state these grounds "before it invites or requests the prevailing party to draft a proposed order." *See Smith v. UHS of Lakeside, Inc.*, 439 S.W.3d 303, 316 (Tenn. 2014).

IV. Common Law Restraint of Trade

The City argues that the trial court erred by denying its motion for summary judgment concerning HGC's claim of common law restraint of trade. The City asserts that Tennessee does not recognize such a claim. HGC posits that a cause of action for common law restraint of trade does exist and that Tennessee has recognized this type of claim for over one hundred years. Without making a determination regarding whether a cause of action for common law restraint of trade exists in Tennessee, we determine the dispositive issue to be whether the City maintains sovereign immunity from such a claim in any event.

The first question certified by the trial court asks whether a "cause of action for the common law tort of restraint of trade exists <u>against a governmental entity</u> in Tennessee" (emphasis added). Governmental entities in Tennessee possess sovereign immunity from suit except "in such manner and in such courts as the Legislature may by law direct." *See* Tenn. Const. art. I, § 17; *see also Davidson v. Lewis Bros. Bakery*, 227 S.W.3d 17, 19 (Tenn. 2007); *Metro. Gov't of Nashville & Davidson Cty. v. Allen*, 415 S.W.2d 632, 635 (Tenn. 1967).

The trial court found that "the veil of immunity does not extend itself to cover governmental entities for violations of restraint of trade under the common law." We respectfully disagree. As this Court has previously explained:

> The doctrine of sovereign immunity has been part of the common law of Tennessee for well over a century and provides that suit may not be brought against a governmental entity unless that governmental entity has consented to be sued. *Hawks v. City of Westmoreland*, 960 S.W.2d 10, 14 (Tenn. 1997) (citing *Lucius v. City of Memphis*, 925 S.W.2d 522, 525 (Tenn. 1996)). The doctrine originated in feudal notions of the divine right of kings, as the king "'was at the very pinnacle of the power structure and was answerable to no court[.]'" *Id.* (quoting *Cooper v. Rutherford County*, 531 S.W.2d 783, 786 (Tenn. 1975) (Henry, J., dissenting)). The longstanding rule of sovereign immunity is embodied in the Tennessee Constitution, which provides, "Suits may be brought against the State in such manner and in such courts as the Legislature may by law direct." Tenn. Const., Art. I, § 17. In addition, Tennessee Code Annotated section 20-13-102(a) provides, "No court in the state shall have any power, jurisdiction or authority to entertain any suit against the state . . . with a view to reach the state, its treasury, funds or property, and all such suits shall be dismissed[.]" In the context of sovereign immunity, "'[t]he State' includes 'the departments, commissions, boards, institutions *and municipalities* of the State.'" *Davidson v. Lewis Bros. Bakery*, 227 S.W.3d 17, 19 (Tenn. 2007) (quoting *Metro. Gov't of Nashville & Davidson County v. Allen*, 220 Tenn. 222, 415 S.W.2d 632, 635 (Tenn. 1967)) (emphasis added).

> "Under both the common law doctrine and the constitutional provision, 'governmental entities may prescribe the terms and conditions under which they consent to be sued, . . . including when, in what forum, and in what manner suit may be brought.'" *Sneed v. City of Red Bank, Tenn.*, 459 S.W.3d 17, 23 (Tenn. 2014) (quoting *Cruse v. City of Columbia*, 922 S.W.2d 492, 495 (Tenn. 1996)). Our state constitution specifically empowers the legislature—not the judiciary—to waive the protections of sovereign immunity. *Hughes v. Metro. Gov't of Nashville & Davidson Cnty.*, 340 S.W.3d 352, 360 (Tenn. 2011); *Mullins v. State*, 320 S.W.3d 273, 283 (Tenn. 2010). "The General Assembly undoubtedly has control over the 'manner . . . and courts' in which suits against governmental entities may be pursued." *Estate of Bell v. Shelby Cnty. Health Care Corp.*, 318 S.W.3d 823, 837 (Tenn. 2010).

The "traditional construction" of Tennessee's constitutional provision regarding sovereign immunity "is that suits cannot be brought against the State unless *explicitly authorized* by statute." *Colonial Pipeline Co. v. Morgan*, 263 S.W.3d 827, 849 (Tenn. 2008) (emphasis added). In other words, "'legislation authorizing suits against the state must provide for the state's consent in 'plain, clear, and unmistakable' terms.'" *Mullins*, 320 S.W.3d at 283 (quoting *Northland Ins. Co. v. State*, 33 S.W.3d 727, 731 (Tenn. 2000)). Courts will not find a waiver of sovereign immunity "'unless there is a statute clearly and unmistakably disclosing an intent upon the part of the Legislature to permit such litigation.'" *Davidson*, 227 S.W.3d at 19 (quoting *Scates v. Bd. of Comm'rs of Union City*, 196 Tenn. 274, 265 S.W.2d 563, 565 (1954)).

*Bratcher v. Hubler*, 508 S.W.3d 206, 208-09 (Tenn. Ct. App. 2015).

One example of such a statute is the Governmental Tort Liability Act ("GTLA"), which was codified in 1973 and governs tort claims against cities and other local government agencies, providing for specific circumstances when sovereign immunity is removed. *See* Tenn. Code Ann. §§ 29-20-201 to -408 (2012 & Supp. 2018); *Lucius v. City of Memphis*, 925 S.W.2d 522, 525 (Tenn. 1996). As our Supreme Court has previously explained:

The GTLA reaffirms, and actually extends, the doctrine of local governmental immunity by abolishing the common law distinction between governmental and proprietary functions. The relevant portion of the GTLA broadly declares:

Except as may be otherwise provided in this chapter, all governmental entities shall be immune from suit for any injury which may result from the activities of such governmental entities wherein such governmental entities are engaged in the exercise and discharge of any of their functions, governmental or proprietary.

Tenn. Code Ann. § 29-20-201(a) (2012). The GTLA then removes governmental immunity in limited circumstances for certain enumerated injuries. *Id*. § 29-20-202(a) (immunity removed for injuries resulting from the negligent operation of a motor vehicle or other equipment by an employee in the scope of employment); *id*. § 29-20-203(a) (immunity removed for injuries caused by a defective, unsafe, or dangerous condition on a public roadway or sidewalk); *id*. § 29-20-204(a) (immunity removed

8

for injuries caused by dangerous or defective conditions associated with public structures or improvements); *id*. § 29-20-205 (immunity removed for injuries caused by the negligence of governmental employees with certain exceptions); *see also Lucius*, 925 S.W.2d at 525 (discussing the GTLA generally); *Cruse*, 922 S.W.2d at 496 (same).

*Sneed v. City of Red Bank*, 459 S.W.3d 17, 25 (Tenn. 2014) (other internal citations omitted).

Notably, the GTLA does not remove governmental immunity for claims based on common law restraint of trade. In fact, this Court has been unable to locate any statutory provision that removes sovereign immunity for such a claim. Therefore, in the absence of a legislative enactment "clearly and unmistakably disclosing an intent upon the part of the Legislature to permit such litigation," sovereign immunity remains. *Bratcher*, 508 S.W.3d at 208-09 (quoting *Davidson*, 227 S.W.3d at 19).

HGC contends that sovereign immunity does not shield the City from liability in this matter because "statutes and ordinances requiring competitive bidding impose upon the government an implied obligation to consider all bids honestly and fairly as a matter of contract law, not as a matter of tort law." We disagree with HGC's contention. HGC's purported claim of common law restraint of trade, if such a cause of action exists, would sound in tort rather than contract law because by asserting such a claim, HGC sought damages for the breach of a duty independent of any contract between the parties. As this Court has previously explained:

> Tort is defined as a private or civil wrong or injury; a wrong independent of contract; a violation of a duty imposed by general law or otherwise upon all persons occupying the relation to each other involved in a given transaction; a violation of some duty owing to plaintiff, and generally such duty must arise by operation of law and not by mere agreement of the parties. *Black's Law Dictionary*, Fourth Edition, p. 1660.
>
> Since a tort is defined as a civil wrong independent of contract, it may be accurately stated that all civil wrongs are either contractual or tortious.

*Burris v. Hosp. Corp. of Am.*, 773 S.W.2d 932, 935 (Tenn. Ct. App. 1989).

One of the many claims asserted by HGC in this action was a breach of contract claim. The trial court properly granted summary judgment to the City concerning HGC's breach of contract claim based upon its finding that the parties herein did not have a valid

contract that could be breached. We agree with the trial court's determination that no contract existed between the parties and therefore conclude that any claim based in contract law has been properly addressed. HGC cannot revive such a claim by attempting to frame its purported claim of common law restraint of trade as a matter of "contract law."

The City retains sovereign immunity against tort claims for which immunity has not been removed by the legislature. Accordingly, we reverse the trial court's denial of summary judgment in favor of the City concerning any purported claim of common law restraint of trade.

### V. Private Cause of Action for Violation of City Ordinances

The trial court found that a private cause of action existed that would allow HGC to sue the City, seeking damages for violations of the City's own competitive bidding ordinances. In its January 18, 2018 order, the trial court stated in pertinent part:

> The Court further finds that a private cause of action exists to allow [HGC] to proceed in its claim against the City for the City's purported violations of its own competitive bidding ordinances. While the Court withholds ruling on whether those ordinances actually were violated or whether they establish a remedy for [HGC] due to a violation of those same ordinances, the Court does find that a private right of action exists for an aggrieved bidder who did not receive a bid if the City's competitive bidding ordinances were violated. This Court finds that the [City's] argument that the appropriate remedy available to [HGC] for a failure of the City to follow its own ordinances would be a petition for writ of certiorari review is unavailing. This Court holds and finds that while a petition for writ of certiorari review may be an adequate remedy, a bidder may also sue a governmental entity in the State of Tennessee for damages under a separate and private cause of action due to a city's failure to follow its ordinances.

The City argues that no such private cause of action exists and that the only review of the City's decision available to HGC would be by writ of certiorari. Upon our careful review of this issue, we agree with the City.

As this Court has previously explained with regard to the question of whether municipal ordinances create a private right of action for damages:

10

The Court can find no better analysis than that provided by U.S. District Court Judge Bernice Donald, who considered the same issue and wrote the following:

> Under Tennessee law, when a plaintiff asserts an injury that involves an alleged statutory violation, it is incumbent upon the court to determine whether the statute in question provides the plaintiff with a cause of action. *Petty v. Daimler/Chrysler Corp.*, 91 S.W.3d 765, 768 (Tenn. Ct. App. 2002). In other words, the mere fact that a statute has been allegedly violated and some person harmed, does not automatically give rise to a private cause of action for monetary relief in favor of that person. *Local 3-689, Oil, Chemical & Atomic Int'l Union v. Martin Marietta Energy Sys.*, 77 F.3d 131, 136 (6th Cir. 1996). In construing the statutory section at issue, the Court is "not privileged to create [a private right of action] under the guise of liberal interpretation of the statute." *Premium Finance Corp. of Am. v. Crump Ins. Serv. of Memphis, Inc.*, 978 S.W.2d 91, 93 (Tenn. 1998). Rather, it is the legislative body that has the authority to create legal rights and interests and no right of action can be brought until there is legislative authority for that right of action. *Id.*; *Hogan v. McDaniel*, 204 Tenn. 235, 319 S.W.2d 221, 225 (Tenn. 1958). As a result, the burden of proving the existence of a private right of action lies with the plaintiff. *Premium Finance*, 978 S.W.2d at 93 (citing *Ergon, Inc. v. Amoco Oil Co.*, 966 F. Supp. 577, 585 (W.D. Tenn. 1997)).
>
> Relying on *Ergon*, this Court noted recently that Tennessee courts have utilized the standard set forth by the United States Supreme Court to determine whether a statute implies a private right of action. *Matthews v. Storgion*, 335 F. Supp. 2d 878, 890 (W.D. Tenn. 2004). In that case, the Court observed that "[t]he touchstone of the analysis is legislative intent: whether the legislature intended in passing the statute to provide a private right of action." *Id.* (quoting *Ergon*, 966 F. Supp. at 583). The factors to consider include whether "1) the plaintiff is a member of the class intended to benefit from the statute, 2) there is any indication of a legislative intent to create a private right of action under the statute, and 3) a

private cause of action is consistent with the underlying purposes of the legislation." *Id*.

Under the above test, the court must first look to the language of the statutory section for guidance. *Id*. (citing *Ergon*, 966 F. Supp. at 584). As stated by the Court in *Ergon*, "unless the legislative intent to create a private right of action 'can be inferred from the language of the statute, the statutory structure, or some other source, the essential predicate for implication of a private remedy simply does not exist.'" *Ergon*, 966 F. Supp. at 584 (quoting *Thompson v. Thompson*, 484 U.S. 174, 179, 108 S. Ct. 513, 98 L. Ed. 2d 512, (1988)). In the present case, neither the Charter nor the City Ordinance provisions at issue explicitly provide for a private cause of action for individual monetary relief or retroactive promotions for an alleged violation of these provisions. There is no enforcement mechanism specifically set forth in § 250.1 of the Charter or § 9-3 of the City Ordinances. *See Premium Finance*, 978 S.W.2d 93 (finding no private right of action, in part, where the statute at issue imposed a specific, mandatory duty but provided no enforcement mechanism for the duty).

Additionally, the respective Articles in which these sections exist do not provide for any method of enforcing the provisions § 250.1 of the Charter or § 9-3 of the City Ordinances. *See* Charter, Art. 34; Memphis Code of Ordinances, Art. 9. Finally, there is nothing explicit or implicit in either provision that indicates any intent to provide a private right of action for monetary relief or retroactive promotions to enforce these provisions. *Cf. Pratt v. Smart Corp.*, 968 S.W.2d 868, 872-73 (Tenn. Ct. App. 1997) (finding that the Medical Records Act authorized a private cause of action by reason of the fact that it allowed for recovery of "actual damages" for willful or reckless violations). Thus, the language of the Charter and City Ordinance provisions does not support a private right of action for monetary relief or retroactive promotions.

Accordingly, although the Court has found Defendant to be in violation of the City Charter and Ordinances in its

> administration of the 2000 process, the Court finds that the
> remedies Plaintiffs seek are unavailable under the city laws.

*Johnson v. City of Memphis*, Nos. 00-2608 DP, 04-2017 DP, 04-2013 DA, 2006 WL 3827481, at *17-18 (W.D. Tenn. Dec. 28, 2006).

*Gillespie v. City of Memphis*, No. W2007-01786-COA-R3-CV, 2008 WL 2331027, at *9-11 (Tenn. Ct. App. June 5, 2008).

The ordinances at issue herein provide a procedure for the solicitation and acceptance of competitive bids for the City's purchase of goods and services.[3] The ordinances further provide guidelines for the City's determination of the "lowest responsible bidder," which include consideration of the bidder's experience and the "quality of performance of previous contracts or services." The ordinances do not explicitly provide for a private cause of action for individual monetary damages, and no legislative intent to create such a cause of action can be inferred from the language used. *See id*. at *10. Furthermore, although the ordinances impose a duty on the City to solicit and consider competitive bids according to the provided guidelines, the ordinances provide no enforcement mechanism for that duty. *See id*. We accordingly conclude that the municipal ordinances at issue do not provide HGC with a private right of action for monetary damages for an alleged violation of the ordinances' provisions.

The City argues that HGC's sole remedy for any alleged violation of the competitive bidding ordinances was via a writ of certiorari. The issue of whether a writ of certiorari is the exclusive remedy for an allegation of violation of competitive bidding ordinances has been previously addressed by this Court in *Duracap Asphalt Paving Co. Inc. v. City of Oak Ridge*, No. E2017-02414-COA-R3-CV, 2018 WL 4236501, at *3 (Tenn. Ct. App. Sept. 6, 2018), wherein this Court explained:

> The appropriate mechanism to challenge the action of a
> governmental board or body depends on the nature of the function that is at
> issue. The essential question posed is "whether the inferior tribunal, board
> or officer exercised a legislative or an administrative function." *McCallen
> v. City of Memphis*, 786 S.W.2d 633, 638 (Tenn. 1990) (citing *Fallin v.
> Knox Cnty. Bd. of Comm'rs*, 656 S.W.2d 338, 341 (Tenn. 1983)). As this

---

[3] Although the full texts of the ordinances do not appear in the record, they have been submitted to this Court as an appendix to the City's brief, and the City has asked this Court to take judicial notice thereof. HGC made no objection to our consideration of the ordinances in its responsive brief and, in fact, also attached a copy of the purchasing ordinances. Accordingly, this Court may take judicial knowledge of and review such duly enacted ordinances. *See* Tenn. R. Evid. 202(b)(3); *Davis Grp. (MC), Inc. v. Metro. Gov't of Nashville & Davidson Cty.*, 912 S.W.2d 178, 181 (Tenn. Ct. App. 1995).

Court has explained, "[i]n the former case, an action for declaratory judgment is appropriate, while in the latter case, a petition for common law writ of certiorari is the proper method by which to challenge an administrative decision." *Kiger v. Nixon*, 1996 WL 512031, at *5 (Tenn. Ct. App. Sept. 11, 1996) (citing *McCallen*, 786 S.W.2d at 639). Distinguishing a legislative action from an administrative action[FN] can be done by focusing on whether the action taken makes new law or executes one already in existence. *McCallen*, 786 S.W.2d at 639 (citation omitted). "In order to qualify as an administrative, judicial, or quasi-judicial act, the discretionary authority of the government body must be exercised within existing standards and guidelines." *Id*.

> [FN] The term "administrative" is frequently used interchangeably in case law with "judicial" or "quasi-judicial." *McCallen*, 786 S.W.2d at 638 (citation omitted).

In *Duracap*, the plaintiff asphalt company had filed suit against the City of Oak Ridge following the plaintiff's unsuccessful bid on a street resurfacing project. *See Duracap*, 2018 WL 4236501, at *1. The plaintiff sought declaratory relief, damages, and certiorari review. *Id*. The trial court treated the plaintiff's complaint as a petition for common law writ of certiorari, determining that such was the proper method for review of the city's decision concerning the bid award. *Id*. at *2. The trial court accordingly dismissed all other claims invoking the original jurisdiction of the court as being improperly joined to the petition for writ of certiorari. *Id*. The *Duracap* trial court subsequently dismissed the petition for writ of certiorari due to the plaintiff's failure to comply with the statutory and constitutional verification requirements concerning a writ of certiorari. *Id*.

On appeal to this Court, the *Duracap* plaintiff asserted that the trial court had erred by dismissing the plaintiff's claims for declaratory and equitable relief upon concluding that the only relief for any alleged violations of the city's competitive bidding ordinances would be through a common law writ of certiorari. *Id*. This Court determined that because the decision to award the project had been made "within the confines of existing law in light of pre-defined standards" (the city's municipal code) and therefore executed law already in existence, the decision was properly characterized as administrative or quasi-judicial rather than legislative.[4] *Id*. at *4. As such, this Court determined that "common law certiorari was the proper vehicle for review." *Id*. at *8. The *Duracap* Court affirmed the trial court's dismissal of the plaintiff's additional claims. *Id*.

---

[4] As previously explained, a legislative action is one that "makes new law." *See Duracap*, 2018 WL 4236501, at *3.

14

In the case at bar, it is undisputed that the City had a municipal code in place that defined the standards by which bids would be submitted, reviewed, and accepted. In fact, HGC relies upon the existence of the City's competitive bidding ordinances for its contention that a private right of action exists for an alleged violation thereof. The difficulty with HGC's claim, however, is that because the City's decision was made "within the confines of existing law in light of pre-defined standards" (the City's ordinances concerning competitive bidding) and therefore executed law already in existence, the decision must be properly characterized as administrative or quasi-judicial rather than legislative. *See Duracap*, 2018 WL 4236501, at *4. As such, pursuant to this Court's decision in *Duracap*, as well as previous decisions, a common law writ of certiorari is the only method of review of such a decision. *See id*. at *8; *Johnson v. Metro. Gov't for Nashville Davidson Cty*., 54 S.W.3d 772, 774 (Tenn. Ct. App. 2001) (explaining that the common law writ of certiorari "is the only mechanism by which a court may review" administrative decisions); *Anderson v. Metro. Dev. & Hous. Agency*, No. M2012-01789-COA-R3-CV, 2013 WL 3941079, at *5 (Tenn. Ct. App. July 26, 2013) (determining that a common law writ of certiorari was the only method to "adjudicate claims brought by parties aggrieved by the orders or judgments of public bodies."). *See also State v. Farris*, No. W2017-00438-COA-R3-CV, 2018 WL 1225746, at *8 (Tenn. Ct. App. Mar. 9, 2018), *perm. app. denied* (Tenn. July 19, 2018) ("[W]hen a board is performing an administrative or quasi-judicial function, review under the common law writ of certiorari is appropriate.").

HGC relies on this Court's decision in *Browning-Ferris Indus. of Tenn., Inc. v. City of Oak Ridge*, 644 S.W.2d 400, 402 (Tenn. Ct. App. 1982), for its assertion that a private right of action exists against a governmental entity for an alleged violation of its competitive bidding ordinances. However, as this Court explained in *Duracap*:

> [W]e have no quarrel with the holding in [*Browning-Ferris*] that an aggrieved low bidder had standing to sue the City for its failure to comply with competitive bidding requirements. However, we would note that the *Browning-Ferris* court did not contemplate the propriety, or lack thereof, of review by writ of certiorari, as both the *Anderson* and *Duckworth* decisions acknowledge. *See Duckworth Pathology Grp., Inc*. [*v. Reg'l Med. Center at Memphis*], [No. W2012-02607-COA-R3-CV,] 2014 WL 1514602, at *7 [(Tenn. Ct. App. Apr. 17, 2014)] (noting that the issue before this Court in *Browning-Ferris* was "limited to standing, and there was no discussion of subject matter jurisdiction or the possibility of proceeding via a petition for certiorari"); *Anderson*, 2013 WL 3941079, at *4 n.2 ("Our opinion in *Browning-Ferris* contains no indication that the question of jurisdiction was ever raised at any point in the course of that litigation."). Certainly, therefore, *Browning-Ferris* does not stand for the proposition that

15

challenges to this particular municipality's competitive bid processes must be pursued by declaratory judgment as opposed to through a writ of certiorari. That particular question was not specifically entertained.

*Duracap*, 2018 WL 4236501, at *4. We agree with the *Duracap* Court's analysis and conclude that the *Browning-Ferris* decision, although providing that an unsuccessful bidder had standing to sue the City for its alleged failure to comply with competitive bidding requirements, "did not contemplate the propriety, or lack thereof, of review by writ of certiorari." *See id.*; *see also Duckworth Pathology Grp., Inc. v. Reg'l Med. Ctr. at Memphis*, No. W2012-02607-COA-R3-CV, 2014 WL 1514602, at *7 (Tenn. Ct. App. Apr. 17, 2014); *Anderson*, 2013 WL 3941079, at *4 n.2.

HGC also relies on this Court's opinion in *Metropolitan Air Research Testing Authority, Inc. v. Metropolitan Government of Nashville & Davidson County*, 842 S.W.2d 611, 617-18 (Tenn. Ct. App. 1992), wherein this Court similarly explained that an unsuccessful bidder would have <u>standing</u> to bring an action against a city for an alleged violation of the city's competitive bidding requirements. In *Metropolitan Air*, the plaintiff was an unsuccessful bidder for a contract for the city's vehicle inspection program. *Id.* at 614. The bidder filed suit against the city, asserting that the contract award should be set aside because the successful bidder's proposal did not meet the bid specifications and because the city's selection process violated the Sunshine Law. *Id.* The trial court dismissed the bidder's claims, and the bidder appealed. *Id.*

On appeal in *Metropolitan Air*, this Court held that the bidder had standing to assert both a Sunshine Law claim and also a claim based on the alleged violation of the city's competitive bidding requirements. *Id.* at 615. With regard to the claim alleging a violation of the city's competitive bidding ordinances, this Court explained:

> For many years, the courts held that unsuccessful bidders did not have standing to challenge the award of a public contract because they had no right to contract with the government. That view is now giving way to a growing number of decisions permitting suits for declaratory or equitable relief by prospective or disappointed bidders who have been aggrieved by a refusal to award a public contract to the lowest responsible qualified bidder.

*Id.* at 616 (internal citations omitted). This Court further elucidated:

> [A]n increasing number of courts recognize that unsuccessful bidders have standing to vindicate the public's interest in competitive bidding. <u>However, in the absence of a statute, an unsuccessful bidder's standing extends only</u>

16

<u>to equitable or declaratory relief to ensure enforcement of required competitive bidding procedures</u>.

*Id*. at 617 (internal citations omitted) (emphasis added). We accordingly conclude that although this Court in *Metropolitan Air*, as in *Browning-Ferris*, did not analyze the specific question of whether the sole remedy for an alleged violation of the city's bidding ordinances was via common law writ of certiorari,[5] the *Metropolitan Air* Court did clearly indicate that in the absence of a statute, an unsuccessful bidder's standing extends only to "equitable or declaratory relief to ensure enforcement of required competitive bidding procedures." *See id*.

In the instant matter, the trial court dismissed HGC's claim for equitable or declaratory relief, finding such claim to be non-justiciable because no equitable or declaratory relief was available to HGC. The propriety of that action is not before us for interlocutory review. The issue presented to this Court is "whether the ordinances governing competitive bidding for the City authorize unsuccessful bidders to bring a private right of action for money damages for violation of their terms and/or whether a petition for a writ of certiorari review is the sole remedy." In accordance with the precedent analyzed above, we determine that unsuccessful bidders are not authorized by the municipal ordinances to bring a private cause of action for monetary damages for an alleged violation of the City's competitive bidding ordinances and that a petition for writ of certiorari is the sole method of review of such an alleged violation. We therefore reverse the trial court's denial of summary judgment to the City on this issue.

## VI. Conclusion

For the foregoing reasons, we reverse the trial court's denial of the City's summary judgment motion. We remand this matter to the trial court for entry of summary judgment in favor of the City concerning HGC's claims. Costs on appeal are taxed to the appellee, H Group Construction, LLC.

_____
THOMAS R. FRIERSON, II, JUDGE

---

[5] The action in *Metropolitan Air* was filed on August 8, 1990, following the city's award of the contract to another bidder on June 26, 1990. *See Metro. Air*, 842 S.W.2d at 615. Therefore, the action was filed within sixty days as required for a writ of certiorari. *See* Tenn. Code Ann. § 27-9-102 (2017). However, the opinion does not indicate whether writ of certiorari review was sought. *See generally Metro. Air*, 842 S.W.2d at 613-21; *Duckworth*, 2014 WL 1514602, at *6 ("Throughout [*Metropolitan Air*], however, there was no mention of petitions for certiorari or whether such a petition would be an appropriate way of challenging the award of a public contract."). This Court ultimately affirmed the trial court's dismissal of the bidder's claims because the bid submitted by the bidder was not in accordance with the city's specifications. *See Metro. Air*, 842 S.W.2d at 621.